IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARIA BROMLEY and KLEBER PAUTA, on behalf of themselves and all others similarly situated, | § § § § | CASE NO. 1:20-CV-439 |
| Plaintiffs, | § § | |
| vs. | § § | CLASS ACTION COMPLAINT |
| SXSW, LLC and SXSW HOLDINGS, INC., | § § § § | |
| Defendants, | § | **DEMAND FOR JURY TRIAL** |

**PLAINTIFFS' CLASS ACTION COMPLAINT**

Plaintiffs Maria Bromley and Kleber Pauta, individually, and on behalf of all others similarly situated, by and through counsel, bring this action against SXSW, LLC and SXSW Holdings, Inc. Plaintiffs' allegations herein are based upon personal knowledge and belief as to their own acts, upon the investigation of their counsel, and upon information and belief as to all other matters.

**INTRODUCTION**

1. Plaintiffs bring this action on behalf of themselves and a class of similarly situated purchasers of wristbands, passes, badges and tickets to South by Southwest, an annual festival held in Austin, Texas.

2. Defendants SXSW, LLC and SXSW Holdings, Inc. (collectively, "SXSW") are the entities that schedule, oversee, organize and manage South by Southwest, which consists of parallel film, interactive media, and music festivals and conferences that take place in mid-March.

3. This year, the South by Southwest Festival was scheduled to be held from March 13 to March 22, 2020. Due to the spread of COVID-19, however, the City of Austin issued an order canceling the 2020 Festival.

4. After learning of the cancellation, Plaintiffs and other similarly situated purchasers contacted SXSW for refunds. Instead of providing refunds for a festival that did not occur through no fault of Plaintiffs or the Class, SXSW offered only to allow purchasers to use their festival credentials to gain admission to one of the next three South by Southwest Festivals, as well as 50% off the walk-up rate during one of the other subsequent years.

5. Plaintiffs and the Class do not necessarily plan to attend future Festivals, however, and even SXSW has acknowledged that future Festivals may not occur.

6. SXSW also has confirmed that it will not provide refunds to Plaintiffs and the Class in connection with the cancellation of the 2020 Festival.

7. Accordingly, Plaintiffs, on behalf of themselves and all other persons who purchased wristbands, tickets, passes, and badges to the 2020 South by Southwest Festival, bring this action for breach of contract and unjust enrichment in order to recover monies paid for a festival that never occurred.

## PARTIES

### Plaintiff Maria Bromley

8. Plaintiff Maria Bromley is a resident of the Commonwealth of Massachusetts and currently resides in Hingham, Massachusetts.

9. On or about February 3, 2020, Plaintiff Bromley purchased a "Platinum" badge from SXSW for approximately $1,670, which included $1,600 for registration and $70 for meals and merchandise.

10. Once Plaintiff Bromley learned that the 2020 South by Southwest Festival was cancelled, she contacted SXSW by telephone to request a cash refund.

11. SXSW's representative advised Plaintiff Bromley that it would not provide cash refunds in connection with the cancellation of the 2020 South by Southwest Festival.

12. On or about March 9, 2020, Plaintiff Bromley sent an email to Reg@SXSW.com requesting a cash refund for the cancelled event. SXSW has failed to respond to her email.

13. On or about April 1, 2020, Plaintiff Bromley received a separate email from SXSW offering to defer her badge to use for the 2021, 2022 or 2023 Festival. The email also states that the offer will expire on April 30, 2020.

### Plaintiff Kleber Pauta

14. Plaintiff Kleber Pauta is a resident of Colorado and currently resides in Denver, Colorado.

15. On or about November 25, 2019, Plaintiff Pauta purchased a badge from SXSW for approximately $1,020.

16. On March 6, 2020, Plaintiff Pauta received an email message from SXSW stating that the Festival had been cancelled.

17. Once Plaintiff Pauta learned that the 2020 South by Southwest festival had been cancelled, he emailed SXSW to request a cash refund.

18. SXSW did not respond to Plaintiff Pauta's email message until April 23, 2020, when it informed him that its "stated registration policy has always been no refunds[,]" and SXSW would not issue him a refund in connection with the 2020 festival.

19. On or about April 1, 2020, Plaintiff Pauta received a separate email from SXSW offering to defer his badge to use for the 2021, 2022 or 2023 Festival. The email also states that the offer will expire on April 30, 2020.

**Defendants**

20. SXSW, LLC is a Texas limited liability company with its principal place of business located at 1400 Lavaca Street, Austin, Texas. It may be served with process upon its registered agent for service of process, Sheri Furley at 1400 Lavaca Street, Suite 1100, Austin Texas 78701, or wherever she may be found.

21. SXSW Holdings, Inc. is a Texas corporation with its principal place of business located in Austin, Texas. It may be served with process upon its registered agent for service of process, Roland Swenson at 400 Bowie Street, Austin, Texas 78703, or wherever he may be found.

22. Defendants are collectively referred to herein as "SXSW" or "Defendants."

**JURISDICTION AND VENUE**

23. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005, because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and Defendants are citizens of different States.

24. This Court has personal jurisdiction over SXSW because both SXSW, LLC and SXSW Holdings, Inc. are formed under the laws of the State of Texas, have corporate headquarters located in Austin, Texas, conduct substantial business in the District, and a substantial part of the acts and omissions complained of occurred in the District.

25. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are headquartered in this district, transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this District. In addition, the agreement into which SXSW entered with Plaintiffs and every member of the Class contains a forum selection clause that vests exclusive jurisdiction over this action "in United States federal and state courts located in Austin, Texas".

## FACTUAL ALLEGATIONS

**The South by Southwest Festival**

26. SXSW hosts the South by Southwest Festival annually in mid-March, in Austin, Texas.

27. The Festival consists of multiple "tracks" of programming relating to film, interactive media, music, gaming, conferences and musical performances.

28. In order to gain admission to the Festival and programming tracks, attendees are required to purchase wristbands, tickets, passes, or badges.

29. SXSW offers "Interactive," "Film" or "Music" badges that provide "primary entry to programming associated with their badge type and . . . secondary access to most other SXSW events[,]" as well as communal amenities such as food courts, awards shows and expositions.[1] For the 2020 Festival, the cost of each of these badges ranged from $1,020 to $1,395, depending on when the badge was purchased and whether any additional options were purchased.

---

[1] https://www.sxsw.com/attend/#chart

30. SXSW also offers "Platinum" badges, which grant primary access to all official SXSW events. For the 2020 Festival, the Platinum badge cost approximately $1,700 depending on the purchase date.

31. Attendees also may purchase Film festival, Music festival or Gaming Expo wristbands, which cost upwards of $225 for the 2020 festival.

32. After accounting for travel and room and board, participants who plan to attend the festival in its entirety can expect to spend thousands of dollars.

33. SXSW collectively refers to wristbands, tickets, passes, and badges as "Credentials," and makes them available for purchase through its website.

34. In order to purchase Credentials, SXSW requires purchasers to agree to its Participation and Credentials Terms and Conditions ("PCT&C"), a copy of which are attached hereto as **Exhibit A**. The PCT&C include several provisions relevant to this action.

35. The PCT&C contain a choice-of-law provision that states they "are governed by the laws of the State of Texas, without regard to its principles of conflicts of laws[,]" and that "Participant[s] and SXSW [t]hereby irrevocably submit to the exclusive jurisdiction of the United States federal and state courts located in Austin, Texas . . . ." Texas law thus governs the claims of each and every Class member.

36. The PCT&C also include a "Refund and Revocation Policy" that provides that "SXSW may, in its sole discretion and at any time determined by SXSW, cancel, revoke, or refuse . . . Credentials, purchases, and/or hotel reservations made through SXSW." The Refund and Revocation Policy also states that SXSW "does not issue refunds under any circumstances" and that "[a]ny and all payments made to SXSW are not refundable for any reason[.]"

37.  Through the Refund and Revocation Policy SXSW purports to reserve the right to retain any and all monies paid for credentials and passes regardless of whether SXSW elects to put on the festival.

38.  If enforced, however, the Refund and Revocation policy would render the PCT&C an unenforceable, illusory, unilateral option contract that allows SXSW to sell Credentials, cancel the Festival for any or no reason whatsoever, and retain all customer payments while leaving Plaintiffs and the Class without a remedy.

39.  Accordingly, the SXSW Refund and Revocation policy is unlawful, unconscionable and unenforceable.

40.  However, the PCT&C also incorporate a severability clause that states, in pertinent part, that "[i]n the event that any term or provision of these Terms is held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability will not affect any other term or provision hereof (which will remain in effect) . . . ." The PCT&C, and its choice of law provision, thus remain enforceable, notwithstanding the invalidity and unenforceability of the Refund and Revocation policy.

**The 2020 South by Southwest Festival**

41.  The 2020 Festival was scheduled to run from March 13, 2020 until March 22, 2020.

42.  Despite reports of COVID-19 spreading during early 2020, on February 28, 2020, SXSW informed the public that the SXSW 2020 event was "proceeding as planned" and that despite some cancellations, the event was on par with past years.[2] SXSW then allowed prospective attendees to continue to purchase tickets.

---

[2] https://twitter.com/sxsw/status/1234612205531934726 (last visited Apr. 22, 2020).

43. On March 6, 2020, the 2020 Festival was canceled due to the COVID-19 pandemic and the City of Austin's local state of emergency declaration.

44. On March 12, 2020, in response to mounting requests for refunds by ticketholders due to the cancelled 2020 Festival, SXSW issued a statement stating that no refunds would be provided for 2020 festival ticket purchases.[3]

45. Instead of providing refunds, SXSW offered the ability to "[d]efer your badge to 2021, 2022, or 2023, and [g]et 50% off the walk-up rate in an alternate year of your choosing between 2021 and 2023[.] This offer is non-transferable and available only to you."[4]

46. SXSW has acknowledged, however, that it cannot be certain that future festivals will occur.

47. SXSW has, in effect, shifted the burden of the COVID-19 pandemic onto festivalgoers like Plaintiffs and the Class, individuals who in these desperate times may sorely need the money they paid to SXSW for a festival that never occurred.

## CLASS ALLEGATIONS

48. Plaintiffs bring this action, individually, and on behalf of a nationwide class, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

> All persons in the United States who purchased Credentials for the 2020 South by Southwest festival in Austin, Texas.

Excluded from the Class are: (a) Defendants; (b) Defendants' affiliates, agents, employees, officers and directors; and (c) the judge assigned to this matter, the judge's staff, and any member

---

[3] https://www.sxsw.com/news/2020/sxsw-update-registration-deferral-details-and-more/ (last visited Apr. 22, 2020).
[4] *Id.*

of the judge's immediate family. Plaintiffs reserve the right to modify, change, or expand the various class definitions set forth above based on discovery and further investigation.

49. **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identity of individual members of the Class is unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that the Class consists of hundreds of thousands of people. The number of Class members can be determined based on SXSW's records.

50. **Commonality**: Common questions of law and fact exist as to all members of each Class. These questions predominate over questions affecting individual Class members. These common legal and factual questions include, but are not limited to

    a. Whether SXSW should be required to provide refunds for its 2020 festival;

    b. Whether SXSW breached the PCT&C by refusing to issue refunds for the 2020 festival;

    c. Whether SXSW's Refund and Revocation Policy is severable from the PCT&C;

    d. Whether SXSW was unjustly enriched by its conduct; and

    e. Whether SXSW has converted monies Plaintiffs and the Class paid for Credentials.

51. **Typicality**: Plaintiffs have the same interest in this matter as all Class members, and Plaintiffs' claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiffs' and Class members' claims all arise out SXSW's uniform conduct and statements.

52.     **Adequacy**: Plaintiffs have no interest that conflicts with the interests of the Class, and are committed to pursuing this action vigorously. Plaintiffs have retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

53.     **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by SXSW's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly-situated individuals. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIOLATIONS ALLEGED

## COUNT I

### BREACH OF CONTRACT

54.     Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint.

55.     Plaintiffs and the Class entered into a contract with SXSW, which SXSW refers to as the Participation and Credentials Terms and Conditions.

56. The contract was offered by SXSW and was formed at the time Plaintiffs and the Class accepted it by purchasing their credentials.

57. Plaintiffs and the Class performed their obligations under the contract by providing payment in consideration for Credentials.

58. When the 2020 Festival was cancelled, however, SXSW refused to refund Plaintiffs and the Class the purchase price paid for Credentials.

59. SXSW refused to provide refunds on grounds that the Participation and Credentials Terms and Conditions state that SXSW "does not issue refunds under any circumstances" and that "[a]ny and all payments made to SXSW are not refundable for any reason[.]"

60. The foregoing "Refund and Revocation Policy" provision on which SXSW relied is unlawful and unenforceable, because enforcing the provision would render SXSW's obligations under the agreement illusory, and thus the Participation and Credentials Terms and Conditions themselves an unenforceable, unilateral option contract.

61. Because the Refund and Revocation Policy unenforceable, it is severed from the contract, allowing Plaintiffs and the Class to pursue the relief to which they are entitled: a refund of all monies paid to SXSW for Credentials for the 2020 festival.

62. As a direct and proximate result of SXSW's breach, Plaintiffs and the Class have suffered monetary damages.

63. Plaintiffs and the Class seek the return of any amounts paid to SXSW for Credentials, as well as attorneys' fees, costs and interest.

## COUNT II

## UNJUST ENRICHMENT

64. Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint

65. Plaintiffs and the Class conferred a direct benefit on SXSW by purchasing Credentials.

66. SXSW knowingly and willingly accepted and enjoyed the benefits conferred on it by Plaintiffs and the Class.

67. SXSW's retention of these benefits is unjust and inequitable under the circumstances.

68. As a direct and proximate result of SXSW's unjust enrichment, Plaintiffs and the Class are entitled to recover the amount each paid to SXSW for their Credentials, as well as attorneys' fees, costs and interest.

## COUNT III

### CONVERSION

69. Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint

70. Plaintiffs and the Class are entitled to a refund of monies paid in exchange for 2020 South by Southwest Festival credentials because the festival was cancelled.

71. Plaintiffs and the Class have demanded that SXSW return their property

72. SXSW has refused to issue refunds to Plaintiffs and the Class, and thus has, unlawfully and without authorization, assumed and exercised dominion and control over that property to the exclusion of, or inconsistent with, the rights of Plaintiffs and the Class.

73. SXSW's conversion has damaged Plaintiffs and the Class in the amount that they paid for 2020 Festival credentials.

74. Plaintiffs and the Class are entitled to recover the amount each paid to SXSW for their Credentials, as well as attorneys' fees, costs and interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, respectfully request that this Court:

A. Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B. Appoint Plaintiffs as the representatives of the Class and their counsel as Class Counsel;

C. Award actual damages and equitable monetary relief to Plaintiffs and the Class and/or order SXSW to return to Plaintiffs and the Class the amount each paid to SXSW;

D. Award pre-judgment and post-judgment interest on such monetary relief;

E. Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires SXSW to issue refunds to all members of the Class;

F. Award reasonable attorneys' fees and costs; and

G. Grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on all issues so triable.

Dated: April 24, 2020                    Respectfully submitted,

                                      HOWRY BREEN & HERMAN, L.L.P.

                                      _____
Randy Howry
State Bar No. 10121690
rhowry@howrybreen.com
Sean Breen
State Bar No. 00783715
sbreen@howrybreen.com
James Hatchitt
State Bar No. 24072478
jhatchitt@howrybreen.com
1900 Pearl Street
Austin, Texas 78705-5408
Tel. (512) 474-7300
Fax (512) 474-8557

Joseph G. Sauder
jgs@sstriallawyers.com
Lori G. Kier
lgk@sstriallawyers.com
Joseph B. Kenney
jbk@sstriallawyers.com
SAUDER SCHELKOPF LLC
1109 Lancaster Ave.
Berwyn, PA 19312
Tel. (888)-711-9975
Fax (610) 421-1326

Daniel O. Herrera
dherrera@caffertyclobes.com
Kaitlin Naughton
knaughton@caffertyclobes.com
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
150 S. Wacker Drive, Suite 3000
Chicago, Illinois 60606
Tel. (312)782-4880
Fax (312)782-7785

Bryan L. Clobes
bclobes@caffertyclobes.com
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
205 N. Monroe St.

14

Media, PA 19063
Tel. (215) 864-2800
Fax (215) 964-2808

*Attorneys for Plaintiffs and the Class*