IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARIA BROMLEY and KLEBER PAUTA, on behalf of themselves and all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 1:20-CV-439-LY |
| SXSW LLC, and, SXSW HOLDINGS, INC., | § § § | |
| Defendants. | § § | |

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF A SETTLEMENT CLASS, <u>APPOINTMENT OF CLASS COUNSEL AND RELATED RELIEF</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 2

SUMMARY OF THE PROPOSED CLASS SETTLEMENT ........................................... 4

ARGUMENT ...................................................................................................................... 8

I.      CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ........................... 8

   A.   This Case Satisfies All Rule 23(a) Prerequisites for Class Certification ......................... 8

      1.   The Class is Sufficiently Numerous................................................................... 8

      2.   Common Questions of Law and Fact Affect All Class Members................................. 9

      3.   The Representative Plaintiffs' Claims Are Typical of Those Held by the Class.................. 10

      4.   Plaintiffs and Class Counsel Have Adequately Protected the Class ............................ 11

   B.   The Proposed Class May Be Maintained Under Rule 23(b)(3) .................................... 13

      1.   Common Questions Predominate in this Case ...................................................... 13

      2.   A Class Action Is a Superior Method for Adjudication of this Controversy ............................. 14

II.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.......... 15

   A.   Class Settlements Are Favored ...................................................................... 15

   B.   The Guidelines for Preliminary Approval of Class Settlements .................................... 15

   C.   The Settlement Agreement Satisfies the Criteria for Preliminary Approval ................. 17

      1.   The Settlement Agreement was Entered into only after Extensive Arm's-Length Negotiations
           Conducted Before an Experienced Mediator ...................................................... 17

      2.   Absent a Settlement, Intense and Costly Litigation May Have Continued for Years................ 17

      3.   The Stage of the Proceedings and Discovery Produced Warrant Approval ..................... 18

      4.   The Proposed Settlement Agreement Achieves Substantial and Concrete Benefits for the Class
           Relative to the Uncertain Outcome of Continued Litigation .................................... 20

      5.   The Proposed Settlement Falls within the Range of Possible Recovery...................... 22

      6.   Proposed Class Counsel Has Provided Competent and Knowledgeable Guidance in this Case,
           the Class Representatives Approve of the Settlement, and There is No Known Opposition to the
           Settlement at this Stage................................................................................ 23

      7.   No Known Opposition to the Settlement Exists at this Stage.................................. 27

III.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN ...................... 27

CONCLUSION.................................................................................................................. 29

i

## **TABLE OF AUTHORITIES**

**Cases**

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................ 8

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ......................................................................... 2

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) ..................................................... 9

*Duncan v. JPMorgan Chase Bank*, N.A., No. SA-14-CA-00912-FB, 2015 WL 116233932 (W.D. Tex. Oct. 21, 2015) ............................................................................................................... 8

Fed. R. Civ. P. 23(b)(3) ................................................................................................................. 14

*Garza v. Sporting Goods Properties, Inc.*, No. CIV. A. SA-93-CA-108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996) .................................................................................................................... 9

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ................................. 17

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ............................................................. 14

*In re Dell Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834 (W.D. Tex. June 11, 2010) .............. 13

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012) ......................................................................................................................... 18

*In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2007 WL 542227 (D.N.J. Feb. 16, 2007) 24

*In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403 (S.D. Tex. 1999) ................................... 8

*Jackson v. Viking Group, Inc.*, No. 8:18-cv-02356-PJM (D. Md.) ................................................ 26

*LaFlamme v. Carpenters Local No. 370 Pension Plan*, 212 F.R.D. 448 (N.D.N.Y. 2003) ......... 28

*Lehmeyer v. Messerli & Kramer, P.A.*, No. CV 15-02419 (HB), 2016 WL 1576439 (D. Minn. Apr. 15, 2016) ........................................................................................................................... 28

*McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424 (E.D. Tex. 2002) ....................................... 15

*Neff v. VIA Metro. Transit Auth.*, 179 F.R.D. 185, 193 (W.D. Tex. 1998) ................................... 9

*Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004) ................................................................. 16

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) .......................................................... 16

*Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316 (N.D. Tex. 2011) ............................................. 9

*Telles v. Midland Coll.*, No. MO:17-CV-00083-DC, 2018 WL 7352426 (W.D. Tex. Apr. 30, 2018) ......................................................................................................................................... 12

*Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) .................................................................................................................. 10

**Other Authorities**

*Newberg on Class Actions* § 11.41 ............................................................................. 16

**Rules**

Fed. R. Civ. P. 23(a)(1)................................................................................................. 9

## INTRODUCTION

As this Court is well aware, Defendants SXSW, LLC and SXSW Holdings, Inc. (collectively, "SXSW") have for decades organized and overseen the South by Southwest Conference and Festivals, a related series of events, programs, and panels hosted annually in Austin, Texas. Wristbands, tickets, passes, and badges ("Credentials") to the South by Southwest festival's 2020 iteration (the "2020 Festival"), scheduled for March 13-22, 2020, ranged in price from $30-300 for wristbands to one-off events to as much as $1,725 for "Platinum Badges" that offered access to most Festival programming.

Due to concerns relating to the COVID-19 pandemic, however, the 2020 Festival was cancelled. Plaintiffs Maria Bromley and Kleber Pauta ("Plaintiffs") and other similarly situated consumers requested refunds from SXSW, but SXSW declined on grounds that its Participation & Credential Terms and Conditions ("PCT&C") included a "no refund" provision. In lieu of refunds, and in exchange for a release of all claims relating to the cancellation of the 2020 Festival, SXSW instead offered customers the option to defer their 2020 Credentials to either the 2021, 2022, or 2023 festival, as well as 50% off Credentials to one alternate year of their choosing within that timeframe. Plaintiffs declined and thereafter commenced this action on behalf of themselves and all others who purchased Credentials to the 2020 Festival.

After months of discovery and several rounds of arms'-length negotiations, including a full-day mediation overseen by an experienced neutral, the Parties reached a Settlement Agreement[1] that will resolve the litigation and provide substantial benefits to the Class. If approved, the Settlement will compensate the Class as follows:

(1) With respect to Members of the Class who accepted SXSW's offer to defer their

---

[1] Capitalized terms have the same meanings as identified in the Settlement Agreement unless otherwise noted.

Credential(s) (the "Deferral Class"), SXSW will (a) issue each a $30 cash payment per Credential purchased and (b) allow deferred Credentials and associated in-kind benefits to be used through the 2024 festival.

(2) Persons who did not accept SXSW's offer to defer their Credential(s) (the "Non-Deferral Class")[2], may elect to either (a) join the Deferral Class and obtain the benefits described above; or (b) receive a refund of 40% of the purchase price of their Credential(s).

The Fifth Circuit—like its sister Circuits—has a long-standing policy that favors the settlement of class action litigation. *See, e.g.*, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). With this principle in mind, Plaintiffs ask the Court to take the first step toward resolving this case: preliminarily approving the settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. Preliminary approval is warranted given the strength of the proposed Settlement, which will conclude otherwise potentially risky litigation by providing substantial and immediate benefits to the Class. Granting the motion will allow the parties to implement the notice plan contemplated by the Settlement Agreement, which in turn will allow Class Members to evaluate the Settlement and respond thereto in the months leading up to a final Fairness Hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs and other consumers purchased Credentials[3] to the 2020 Festival, which was cancelled due to concerns related to the COVID-19 pandemic. After learning of the cancellation, Plaintiffs and other similarly situated consumers requested refunds from SXSW. SXSW refused

---

[2] The Deferral Class and Non-Deferral Class are referred to collectively herein as the "Class."

[3] The price of admission ranged from approximately $30-$300 for specific film, gaming, and music events; $225-$595 for SXSW EDU, an education-focused conference that takes place contemporaneously with the broader festival; and $325-$1,725 for "badges" that provide "primary entry to programming associated with their badge type and … secondary access to most other" festival events.

their requests, citing the "no-refund" policy reflected in its PCT&C, which purported to allow SXSW to withhold refunds under any circumstances. SXSW instead sent all prospective attendees emails in which it offered them the option to defer their 2020 Credentials to one of the next three South by Southwest festivals (2021-23), and receive 50% off Credentials to one alternate year of their choosing. In order to receive those benefits, however, SXSW required customers to agree to release it from all liability arising from the cancellation of the 2020 Festival.

Plaintiffs declined SXSW's deferral offer and instead brought suit on behalf of themselves and all other persons who purchased 2020 Credentials. ECF No. 1. Plaintiffs brought claims for breach of contract, unjust enrichment, and conversion, and demanded a refund of all monies paid for Credentials to the 2020 Festival. *See id.* SXSW answered the Complaint on June 16, 2020, ECF No. 15, and the parties immediately worked to schedule their Rule 26(f) conference.

During that conference the parties recognized their mutual interest in exploring an early resolution. Plaintiffs thereafter served narrow requests for data and information needed to evaluate the size of the putative Class and the damages suffered thereby, as well as the merits of both the Class' claims and SXSW's defenses, including SXSW's assertion that many Class Members released SXSW from liability by accepting its deferral offer. SXSW produced the information Plaintiffs requested on August 20, 2020—including sales and deferral data, and exemplar Class Member communications and releases—and supplemented its production on September 11 and November 4. The parties further discussed SXSW's productions on several occasions, which allowed the parties to exchange settlement proposals on October 8 and 28, and November 11. Meanwhile, the Parties submitted their proposed Scheduling Order to the Court on July 29, appeared for an initial status conference on August 25, and submitted a proposed Confidentiality and Protective Order on August 10, ECF No. 18, which the Court

granted on August 11, 2020. ECF No. 19.

On October 30, 2020, Plaintiffs and SXSW jointly filed their Alternative Dispute Resolution Report informing this Court that court-ordered ADR was not necessary at that point. ECF No. 24. However, the Parties later concluded that mediation would aid their ongoing settlement discussions. Accordingly, on December 17, 2020, Plaintiffs and SXSW held a full day mediation with mediator Dean Kilgore through the Zoom videoconferencing platform, during which the parties continued to exchange information speaking to the relative strengths and weaknesses of their claims and defenses. Declaration of Joseph G. Sauder ("Sauder Decl.") at ¶ 6; Declaration of Daniel Herrera ("Herrera Decl.") at ¶ 5; Declaration of Randy Howry ("Howry Decl.") at ¶ 5. After more than ten hours of mediation, the parties reached agreement on the material terms of the Settlement, and then began to work diligently and cooperatively to convert their agreement in principle into the comprehensive Settlement Agreement now before this Court. Sauder Decl. at ¶ 6; Herrera Decl. at ¶ 5; Howry Decl. at ¶ 5.

## SUMMARY OF THE PROPOSED CLASS SETTLEMENT

The proposed Settlement, which is attached as Exhibit A to the Declaration of Daniel Herrera will provide considerable benefits to the Class, above and beyond the relief SXSW offered Class Members after cancelling the 2020 Festival. The Settlement Agreement's key terms are:

**The Class**:

All persons, wherever located, who purchased Credentials for the 2020 South by Southwest Conference and Festivals in Austin, Texas, pursuant to the Participation and Credentials Terms and Conditions ("PCT&C") (Exhibit 1 to the Settlement Agreement). The Class includes both the Deferral Class and the Non-Deferral Class, defined below.

**The Deferral Class:**

Members of the Class who accepted SXSW's offer to defer their Credential(s) purchased to attend the 2020 South by Southwest Conference & Festivals ("the Deferral Offer").

4

**The Non-Deferral Class:**

Members of the Class who did not accept the Deferral Offer.

Excluded from the Class are all claims for death, personal injury, property damage, and subrogation. Also excluded from the Class are all purchasers of Credentials who pursued and won a chargeback through their credit card company and received a refund of their payment to SXSW for such Credentials; businesses or government agencies that obtained Credentials from SXSW's Sales, Special Projects, and/or Sponsorship departments as part of their purchase of exhibition, marketing, trade and/or sponsorship packages; SXSW; any affiliate, parent, or subsidiary of SXSW; any entity in which SXSW has a controlling interest; any officer, director, or employee of SXSW; any successor or assign of SXSW; any judge to whom this Action is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons.

Settlement Agreement ("SA") § I. The Class is an opt-out class under Rule 23(b)(3).

*Payments to the Class*: Each Deferral Class Member will receive $30.00 per Credential purchased, may now defer their 2020 Credentials to any future SXSW festival through 2024, and may purchase an equal number of Credentials to one alternate year, but for a year other than the year to which they deferred their original Credential, between 2022 and 2024 at 50% off the walk-up rate. SA § III(A). Each Non-Deferral Class Member will be entitled to choose between joining and obtaining the same relief as the Deferral Class, or receiving a refund equal to 40% of the purchase price of their Credentials. SA § III(B). Non-Deferral Class Members shall have until eighty-one (81) days after the Court grants preliminary approval to decide whether to join the Deferral Class. SA § V(D). Payments to both the Deferral Class and the Non-Deferral Class shall be made within 60 days following the Effective Date. SA § IV(A). Any person who purchased a ticket to attend the BBQ Crash Course or Taco Meet Up events pursuant to the PCT&C will receive a 100% refund of those payments. SA § III(C).

*Notice and Settlement Administration*: SXSW will self-administer the Settlement and the associated notice program, and pay all costs associated therewith, and has retained a claims

administration company to assist it, the choice of which Class Counsel has approved. SA § ¶ III(D), IV, V. SXSW has retained JND Legal Administration, a well-regarded claims administrator, to consult and assist SXSW with, among other things, preparing the Settlement Website; preparing and sending notices to the Settlement Class; and assisting SXSW with receiving and processing claims forms and making class payments. SXSW will self-administer the Settlement, however, and Class Counsel intends to avail themselves of their audit rights in order to ensure that the Settlement is affected consistent with the parties' written agreement.

SXSW's responsibilities include: (a) sending notice; (b) conducting reasonable searches for Class Member email and current mailing addresses; (c) mailing any notices returned as undeliverable; (d) processing claims; (e) sending payments to Class Members; (f) processing opt-out requests; and (g) providing reports about the claims process. SA § ¶ III(D), IV, V.

With respect to notice, the parties negotiated a notice program designed to provide the best notice practicable under the circumstances, and which thus satisfies both Rule 23 and due process. Because all 2020 Credentials were purchased online and delivered via email, each Class Member provided SXSW with a valid email address at the time of purchase. SXSW will deliver notice of the Settlement to each Class Member at that email address. In the event email notice is returned as undeliverable, SXSW shall attempt to contact the Class Member by calling the contact phone number provided to SXSW to obtain an alternate email address. If such Class Members do not provide an alternative email address, request notice by mail, or cannot be reached by phone after reasonable efforts, SXSW will send by U.S. Postal Service First Class Mail a Mailed Notice to the most current mailing address SXSW possesses for that Class Member. Further, prior to the disseminating notice SXSW will establish a Settlement Website to provide information to Class Members about the terms of the Settlement and their rights thereunder, as well as dates, deadlines,

and related information. SA § V(C).

The Settlement also provides for a streamlined claims process. Each of the Email Notice the Notice Website[4] will directly link Class Members to the online Claim Form, which shall: (i) display the Class Member's 2020 SXSW credential purchase(s) by credential purchased, registrant, deferral status (if any), and amount(s) paid; (ii) require the Class Member to certify that they are the purchaser of the 2020 SXSW credentials displayed or are acting with the purchaser's knowledge and consent; (iii) request the Class Member to identify the preferred method of payment as offered in the Class Benefits; (iv) provide Non-Deferral Class Members the opportunity to choose to join the Deferral Class and receive Deferral Benefits as to each credential purchased; (v) display the Class Benefits elected to be received by the Class Member; and (vi) require the Class Member to confirm their choice(s) by clicking an "I Agree" button in order to submit their Claim Form. SA § V(D)(1).

***Class Member Releases***: Upon final approval of the Settlement, all Class Members will release all of their potential claims relating to their purchase of 2020 South by Southwest Credentials. *See* SA § VII.

***Class Representative Service Awards***: Considering their greater involvement in the litigation and settlement process, Plaintiffs will petition the Court for Service Awards of $2,000 for each Plaintiff ($4,000 total). SA § VI(2).

***Attorneys' Fees, Costs, and Expenses***: SXSW has also agreed to pay, subject to Court approval, a total of $400,000 in attorneys' fees, costs, and expenses to Class Counsel. SA § VI(1). Class Counsel will file a motion for the Service Awards and attorneys' fees, costs, and expenses pursuant to the schedule set forth in the Preliminary Approval Order and will support both requests

---

[4] Mailed Notice, to the extent issued, will provide the Settlement Website's URL.

in detail. SA § VI(1).

## ARGUMENT

## I.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

The proposed Settlement's benefits can be realized only if this Court certifies the Class for settlement purposes. *See In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 418 (S.D. Tex. 1999) ("a district court must first find that a class satisfies the requirements of Rule 23, regardless of whether it is certifying the class for trial or for settlement."). "Settlement classes are a typical feature of modern class litigation, and courts routinely certify them, under the guidance of *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), to facilitate the voluntary resolution of legal disputes." *Duncan v. JPMorgan Chase Bank*, N.A., No. SA-14-CA-00912-FB, 2015 WL 11623393, at *2 (W.D. Tex. Oct. 21, 2015). However, when evaluating a request for settlement-only class certification, "a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620.

Here, the parties have agreed to the certification of the Class, under Fed. R. Civ. P. 23(a) and 23(b)(3), as defined above. Because that Class meets the requirements of Rule 23, the Court should certify it accordingly.

### A.    This Case Satisfies All Rule 23(a) Prerequisites for Class Certification

Rule 23(a) requires that any proposed class meet four prerequisites: numerosity, commonality, typicality, and adequacy of representation. The proposed Class satisfies each element.

#### 1.    The Class is Sufficiently Numerous

The Members of the Class are numerous, making their individual joinder impracticable.

Fed. R. Civ. P. 23(a)(1) Although there is no bright line test, courts in this Circuit have found that classes consisting of more 650 members satisfy the numerosity requirement. *See Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 324 (N.D. Tex. 2011) (concluding settlement class including at least 650 investors was sufficient to satisfy the numerosity requirement); *see also Neff v. VIA Metro. Transit Auth.*, 179 F.R.D. 185, 193 (W.D. Tex. 1998) (finding settlement class including at least 12,000 individuals was sufficient to satisfy the numerosity requirement). However, "[t]he proper focus is not solely on the number of members but 'on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors.'" *Neff*, 179 F.R.D. at 193 (quoting *Zeidman v. J. Ray McDermott & Co., Inc.*, 651 F.2d 1030, 1038 (5th Cir.1981)). These other relevant factors include "the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Neff*, 179 F.R.D. at 193 (quoting *Zeidman*, 651 F.2d at 1038).

The Class easily satisfies this element: it consists of approximately 20,000 geographically dispersed Class Members, making joinder impracticable. *See Stott*, 277 F.R.D. at 324 (holding settlement class including at least 650 geographically dispersed investors was sufficient to satisfy the numerosity requirement).

### 2.    Common Questions of Law and Fact Affect All Class Members

There also exist questions of law or fact common to the Class. Fed. R. Civ. P. 23(a)(2). "The commonality requirement … mandates there be at least one factual or legal issue which is common to all or substantially all of the class members." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 280 (W.D. Tex. 2007). "The threshold of 'commonality' is not high." *Garza v. Sporting Goods Properties, Inc.*, No. CIV. A. SA-93-CA-108, 1996 WL 56247, at *4 (W.D. Tex. Feb. 6, 1996) (quoting *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir.1986)). This standard

is met when "there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639, at *5 (W.D. Tex. Aug. 20, 2018) (quoting *Lightbourn v. Cnty. of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)).

This case comfortably satisfies this minimal standard. As alleged in Plaintiffs' Complaint, common questions of law and fact exist as to:

- whether SXSW should be required to provide refunds for the 2020 Festival;

- whether SXSW breached the PCT&C by refusing to issue refunds for the 2020 Festival;

- whether SXSW's Refund and Revocation Policy is severable from the PCT&C;

- whether SXSW was unjustly enriched by its conduct; and

- whether SXSW has converted monies Plaintiffs and the Class paid for Credentials.

*See* ECF No. 1, ¶ 50.  Underlying these common questions is a common nucleus of operative facts: the cancellation of the 2020 Festival and SXSW's subsequent refusal to provide refunds to the Class. Because these central issues are common to all Members of the Class, the Class satisfies the commonality requirement of Fed. R. Civ. P. 23(a). *See DeHoyos*, 240 F.R.D. at 281 ("Because the class is affected by this general policy, which is the focus of this litigation, the commonality requirement has been met.").

### 3. The Representative Plaintiffs' Claims Are Typical of Those Held by the Class

Typicality under Rule 23(a)(3) is easily satisfied. "The typicality requirement does not focus as much on the relative strengths of the cases of the named and unnamed plaintiffs as it does on the 'similarity of the legal and remedial theories behind their claims.'" *Neff*, 179 F.R.D. at 194 (quoting *Jenkins*, 782 F.2d at 472). Thus, "Rule 23(a)(3)'s typicality requirement 'is satisfied when

each class member's claim arises from the same [common] course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *DeHoyos*, 240 F.R.D. at 282 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993)). The typicality requirement is liberally construed. *See DeHoyos*, 240 F.R.D. at 282 (quoting *San Antonio Hispanic Police Officers' Org., Inc.*, 188 F.R.D. 433, 442 (W.D.Tex.1999)) ("the typicality requirement 'is not demanding.'").

Here, typicality is satisfied because Plaintiffs' claims and those of the Class they seek to represent derive from the same operative facts: Plaintiffs and Class Members all purchased Credentials for the 2020 Festival and incurred damages as a result. Further, the claims of both Plaintiffs and the Class are based on the same legal theories: SXSW's breach of contract, unjust enrichment, and conversion. Plaintiffs' claims undoubtedly are typical of those of the Class. *See Welsh*, 2018 WL 7283639, at *6 ("Here, Plaintiff's claims are typical of the claims of the proposed class because all the claims arise out of the same conduct: NFCU's purported miscalculation of coverage under the terms of its GAP Plan …. [and] [t]he claims are also based on the same legal theory: breach of contract.").

### 4. Plaintiffs and Class Counsel Have Adequately Protected the Class

The adequacy requirement examines both the class representatives and their counsel, *Jenkins*, 782 F.2d at 472, and "'serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent' and 'mandates an inquiry into (1) the zeal and competence of the representative's counsel; and (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees.'" *Duncan*, 2015 WL 11623393, at *3 (quoting *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001)). It is easily satisfied here, because Plaintiffs and Class Counsel have (and will continue to)

"fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

As to the Plaintiffs, they have retained competent counsel to represent them and the Class and taken an active role in this litigation, and their interests do not conflict with those of the Class. Indeed, Plaintiffs' interests and claims are entirely consistent with those of the Class, and logic, along with the history of this litigation, indicates that Plaintiffs have and will continue to vigorously advocate for Class Members. *See Garza*, 1996 WL 56247, at *5 (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir.1981)) ("as long as 'all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes.'"); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. at 422 (quoting 1 Newberg § 3.42 at 3–220) ("In the absence of a showing to the contrary, the court may generally presume that prosecution of the action will be vigorous."). Since neither conflicting nor antagonistic claims exist, there are no conflicts of interest, let alone disqualifying ones. Plaintiffs are adequate representatives.

Proposed Class Counsel[5] also satisfy the dual requirements of competence and zeal as "long-time federal practitioner[s]" that "ha[ve] and will continue to represent [their] clients and the class with vigor, dedication, and proficiency." *See Telles v. Midland Coll.*, No. MO:17-CV-00083-DC, 2018 WL 7352426, at *2 (W.D. Tex. Apr. 30, 2018). Plaintiffs' Co-Lead Counsel are reputable and highly experienced litigators, having successfully led numerous nationwide consumer class actions. Sauder Decl. at ¶ 8, Ex. A; Herrera Decl. ¶ at 7, Ex. B; Howry Decl. at ¶ 8, Ex. A. In this case, they aggressively litigated the case by, *inter alia*, communicating with hundreds of Class Members and conducting an ongoing investigation of their claims and the future of the SXSW festival, reviewing discovery, and vigorously pursuing a settlement. All told,

---

[5] Class Counsel means Sauder Schelkopf LLC, Cafferty Clobes Meriwether & Sprengel LLP, and Howry Breen & Herman LLP.

Plaintiffs' attorneys have devoted substantial time and resources towards investigating the underlying facts, researching the applicable law, prosecuting the case, and negotiating the Settlement. Sauder Decl. at ¶¶ 3-6; Herrera Decl. at ¶¶ 2-5; Howry Decl. at ¶¶ 2-5. Plaintiffs and their attorneys have demonstrated they are fully capable of litigating this case and that the interests of the Class have been and will be fairly and adequately protected.

### B.    The Proposed Class May Be Maintained Under Rule 23(b)(3)

Once Rule 23(a) is satisfied, the Court must proceed to consider the predominance and superiority requirements of Rule 23(b)(3), which ask the Court to assess whether "questions of law or fact common to the class predominate over any [individualized questions], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs satisfy these requirements.

### 1.    Common Questions Predominate in this Case

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. To meet this requirement, there must be "questions of law or fact common to the members of the class [that] 'predominate over any questions affecting only individual members.'" *In re Dell Inc.*, No. A-06-CA-726-SS, 2010 WL 2371834, at *4 (W.D. Tex. June 11, 2010), *aff'd, appeal dismissed sub nom. Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) (quoting *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir.2005)). "[C]ommon questions present a significant aspect of the case and can be resolved for all settlement class members in a single common judgment." *Welsh*, 2018 WL 7283639, at *7 (finding that claims based on a central issue and the same legal theories satisfy the predominance requirement for settlement purposes).

Here, key common questions make the Class cohesive and would drive the resolution of

the litigation, including whether SXSW should be required to provide refunds in connection with the 2020 Festival. In other words, the "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Welsh*, 2018 WL 7283639, at *7 (*Amchem Prods.*, 521 U.S. at 623). Further, because a Class is sought here for settlement purposes and there will be no trial, the Court need not inquire whether the case, if tried, would present manageability problems due to individualized issues. *See In re Deepwater Horizon*, 739 F.3d 790, 818 (5th Cir. 2014) (quoting *Amchem Prods.*, 521 U.S. at 620).

## 2.    A Class Action Is a Superior Method for Adjudication of this Controversy

The requirement that the Class action be "superior to other available methods for fairly and efficiently adjudicating the controversy" is fulfilled here. Fed. R. Civ. P. 23(b)(3). Indeed, "Rule 23(b)(3) is the best method of adjudication for situations … in which the potential recovery is 'typically so small ... that litigation of a single claim is, as a general matter, hardly worth the cost and effort of litigation.'" *Welsh*, 2018 WL 7283639, at *7 (*Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 501 (E.D. Pa. 2009)). Rule-makers designed the class action device for a case like this: a large number of claims, in the thousands, which would be uneconomical to pursue on an individual basis. As the Supreme Court stressed:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem Prods.*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

In this case, the Class Members are far too numerous and the typical individual claim likely too small for them to pursue their claims separately. The class action device is the only viable

means by which the vast majority of persons allegedly injured by SXSW's conduct may obtain a remedy. A class action, and certification of the Class, undoubtedly is the appropriate and superior method for adjudication of these claims, satisfying Rule 23(b)(3).

## II.    THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

### A.    Class Settlements Are Favored

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis. However, "in class action suits, there is an overriding public interest in favor of settlement." *Cotton*, 559 F.2d at 1331 (citing *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975)). Accordingly, "the Fifth Circuit has admonished courts to be mindful of the 'overriding public interest in favor of settlement' in class action suits." *Neff*, 179 F.R.D. at 208 (quoting *Cotton*, 559 F.2d at 1331).

### B.    The Guidelines for Preliminary Approval of Class Settlements

At this juncture, Plaintiffs request that the Court preliminarily approve the Settlement so that notice may be sent to the Class. Preliminary approval involves a two-step process. *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002).  First, "[t]he Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel." *Telles*, 2018 WL 7352424, at *2. Second, "[i]f the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *Id.*

In assessing whether a settlement satisfies the "fair, adequate, and reasonable" standard, the Fifth Circuit has identified six key points of analysis, known as the "*Reed* factors." *Welsh*, 2018 WL 7283639, at *11 (citing *Dell Inc.*, 669 F.3d at 639). The *Reed* factors include:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

The *sine qua non* of an approvable proposed settlement is that it be "fair, adequate, and reasonable and is not the product of collusion between the parties." *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004). A finding of fairness is bolstered where, as here, the proposed Settlement was reached only after zealous, arms-length negotiations. Sauder Decl. at ¶¶ 5-6; Herrera Decl. at ¶¶ 4-5; Howry Decl. at ¶¶ 4-5; *see Duncan*, 2015 WL 11623393, at *3 (concluding settlement negotiations that involve arm's-length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness); 4 *Newberg on Class Actions* § 11.41 (fairness of a class settlement may be initially presumed when the settlement has been arrived at by arm's length bargaining, among other considerations).

Moreover, "[a]lthough a more rigorous examination of the Settlement Agreement is required following a formal fairness hearing, the Court need only conduct a preliminary fairness evaluation at this stage of the proceedings." *Telles*, 2018 WL 7352426, at *3. "Preliminary approval is appropriate where 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible judicial approval.'" *Duncan*, 2015 WL 11623393, at *3 (quoting *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993)).

The proposed Settlement meets all the criteria for preliminary approval. As illustrated below, the proposed Settlement is within the range of possible approval and provides important

benefits to the Class relative to the potential costly and uncertain outcome of continued litigation. Further, there is no evidence whatsoever of collusion or overreaching: to the contrary, the proposed Settlement is the product of protracted and extensive arm's-length negotiations conducted by experienced counsel before an experienced mediator. Sauder Decl. at ¶ 6; Herrera Decl. at ¶ 5; Howry Decl. at ¶ 5.

### C.    The Settlement Agreement Satisfies the Criteria for Preliminary Approval

#### 1.    The Settlement Agreement was Entered into only after Extensive Arm's-Length Negotiations Conducted Before an Experienced Mediator

"Courts may presume that a proposed settlement is fair and reasonable, and lacking fraud or collusion, when it is the result of arm's-length negotiations." *DeHoyos*, 240 F.R.D. at 287. That is precisely the case here, where the parties reached the Settlement only after exchanging several demands and counteroffers, culminating in over ten hours of negotiations before an experienced mediator. *See Welsh*, 2018 WL 7283639, at *12; *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (noting that the "presence of a neutral mediator" is a factor "weighing in favor of a finding of non-collusiveness"). And because there is no "evidence to the contrary[,]" the Court "may likewise presume that no fraud or collusion occurred between opposing counsel . . . ." *Welsh*, 2018 WL 7283639, at *12 (citing *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010)).

#### 2.    Absent a Settlement, Intense and Costly Litigation May Have Continued for Years

In evaluating the merits of a class action settlement, this Court has recognized it is important to be mindful of "the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *DeHoyos*, 240 F.R.D. at 291 (quoting *San Antonio Hispanic Officers'*

*Org., Inc.*, 188 F.R.D. at 458). "When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1064 (S.D. Tex. 2012) (quoting *Klein*, 705 F. Supp. 2d at 651).

Although the Parties began settlement discussions approximately eight months after the initial Complaint was filed, SXSW has repeatedly denied its liability. Additional litigation thus likely would include: (1) contested class certification proceedings, particularly as to the inclusion of Members of the Deferral Class, which SXSW asserted had released their claims; (2) an appeal under Federal Rule of Procedure 23(f); (3) dispositive motions filed by both Plaintiffs and SXSW; (4) extensive pretrial filings; (5) a lengthy trial; (6) post-trial proceedings in this District Court; and (7) further appeals. Litigating this case to trial would be "time consuming, and '[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years.'" *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1064 (quoting *Rodriguez v. West Pub'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)). In short, in cases like this, continued litigation comes at considerable expense to both sides, as well as to the limited resources of the Court. All the while, Plaintiffs and the Members of the Class would be forced to sit idly with no guarantee of future recovery.

### 3.    The Stage of the Proceedings and Discovery Produced Warrant Approval

In applying this factor, courts evaluate "whether the parties have obtained sufficient information to evaluate the merits of the competing positions ... and whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed[.]" *Welsh*, 2018 WL 7283639, at *14 (quoting *In re Educ. Testing Serv. Praxis Principles of Learning*

*and Teaching: Grades 7–12 Litig.*, 447 F. Supp. 2d 612, 620 (E.D. La. 2006)). However, "[g]enerally speaking, a settlement should stand or fall on the adequacy of its terms." *Newby*, 394 F.3d at 306 (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d at 211).

It is in the discretion of the Court to determine "[t]he extent of discovery needed in order for the parties to have sufficient information to make an informed and reasoned evaluation of the settlement and for the Court to be able to determine the fairness and adequacy of the compromise[.]" *Neff*, 179 F.R.D. at 209. However, "[s]ufficiency of information does not depend on the amount of formal discovery that has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed." *Id.* As the Fifth Circuit explained: "[t]he overriding theme of our caselaw is that formal discovery is not necessary [for Settlement] as long as (1) the interests of the class are not prejudiced by the settlement negotiations and (2) there are substantial factual bases on which to premise settlement." *Newby*, 394 F.3d at 306. Such is the case here.

Plaintiffs developed an informed understanding of this case through discovery—which allowed them to value the Class' damages and evaluate the merits of SXSW's defenses—as well as a thorough independent investigation conducted primarily through interviews with both the Plaintiffs and absent Class Members who contacted Class Counsel for aid and assistance. They carefully reviewed the communications, documents, and data produced by SXSW and, as a result, were able to engage in meaningful settlement negotiations. Sauder Decl. at ¶¶ 5-6; Herrera Decl. at ¶¶ 4-5; Howry Decl. at ¶¶ 4-5.  Having previously brought many consumer class actions, and having reviewed SXSW's considerable productions, Proposed Class Counsel were able to meaningfully assess and understand the strengths and weaknesses of Plaintiffs' case. The Court and counsel are in an excellent position, therefore, to evaluate the merits of the proposed

Settlement versus the risk and costs associated with continued litigation. *See In re Heartland*, 851 F. Supp. 2d at 1065 (concluding this factor weighed in favor of settlement when confirmatory discovery gave parties "sufficient information to gauge the strengths and weaknesses of the claims and defenses").

> **4.      The Proposed Settlement Agreement Achieves Substantial and Concrete Benefits for the Class Relative to the Uncertain Outcome of Continued Litigation**

"[T]he most important factor in determining the fairness, adequacy, and reasonableness of the settlement is the likelihood of plaintiffs' success on the merits if the case were to proceed to trial." *DeHoyos*, 240 F.R.D. at 287 (citing *San Antonio Hispanic Police Officers' Org., Inc.*, 188 F.R.D. at 459). "In evaluating the likelihood of success, the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *DeHoyos*, 240 F.R.D. at 287 (citing *Reed*, 703 F.2d at 172). However, the evaluation of the costs and benefits of settlement must be tempered by the recognition that any compromise involves concessions from all parties.

"[T]he court is not to decide the issues or try the case via the fairness hearing because, '[t]he very purpose of the compromise is to avoid the delay and expense of such a trial.'" *Garza*, 1996 WL 56247, at *14 (quoting *Reed*, 703 F.2d at 172). "[T]he Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *Neff*, 179 F.R.D. at 209 (quoting *In re Shell Oil Refinery*, 155 F.R.D. at 560). Further, the Court "should not make a proponent of a proposed settlement justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in

compromise is a yielding of absolutes and an abandoning of highest hopes." *Cotton*, 559 F.2d at 1330 (quoting *Milstein v. Werner*, 57 F.R.D. 515, 524-25 (S.D.N.Y.1972)).

Here, the Settlement strikes a compromise that affords fair compensation to Class Members. Under the proposed Settlement, Members of the Deferral Class—persons whom the Court may have determined released any and all claims against SXSW arising from the 2020 Festival—will receive $30.00, and can now defer their Credentials (and purchase an additional Credential at 50% of the walk-up rate) through 2024. The Settlement likewise provides substantial and meaningful relief to Members of the Non-Deferral Class, who may either elect to receive reimbursement for 40% of the purchase price of their Credentials, or join the Deferral Class and obtain the same relief to which it is entitled. Conversely, had the case not settled the Class may very well have walked away empty handed.

While Plaintiffs believe that their claims are meritorious, they also recognize that their efforts to obtain a class-wide judgment for the full value of the Class' claims were likely to encounter significant—and potentially insurmountable—hurdles. If litigation proceeded absent settlement, SXSW would hotly contest class certification and findings of liability. SXSW would likely contend that a majority of the putative Class that the Plaintiffs sought to certify accepted SXSW's deferral offer and granted a release, thus barring any claims on their behalf due to accord and satisfaction, waiver, and release. Even if a Class were certified, SXSW would likely maintain that Plaintiffs could not prove the essential element of breach because they knowingly assented to SXSW's PCT&T, which expressly provided that Credentials were non-refundable. Moreover, even had Plaintiffs convinced this Court to sever the no-refund provision, SXSW likely would have argued that because the City of Austin cancelled the 2020 Festival, performance under the PCT&T was impossible, illegal, and/or impracticable, relieving SXSW of its contractual

obligations. These are the very affirmative defenses SXSW raised in their Answer. *See* ECF No. 15, at 8. And even had the Court certified the Class, SXSW presumably would have moved to decertify the Classes or pursued an interlocutory appeal before the Fifth Circuit. Plaintiffs and Proposed Class Counsel would have persisted, but a successful outcome was anything but certain.

In short, complex cases like the action presently before this Court are inherently risky; there is always a genuine chance that Plaintiffs may not succeed on the merits or, even if they do, they may not obtain the measure of relief they seek. *See In re Heartland*, 851 F. Supp. 2d at 1065. Given the challenges and difficulties protracted litigation posed for Plaintiffs and the Class, the proposed Settlement's substantial and immediate benefits unquestionably weigh in favor of approval.

### 5.    The Proposed Settlement Falls within the Range of Possible Recovery

In determining whether the settlement is reasonable in light of the range of possible recovery factor, the Court is to "determine the value of the settlement in light of the potential for recovery." *Neff*, 179 F.R.D. at 210 (quoting *In re Shell Oil Refinery*, 155 F.R.D. at 563). This analysis requires the Court to "establish the range of possible damages that could be recovered at trial, and, then, by evaluating the likelihood of prevailing at trial and other relevant factors, determine whether the settlement is pegged at a point in the range that is fair to the plaintiff settlors." *Neff*, 179 F.R.D. at 210 (quoting *In re Corrugated Container Antitrust Litig.*, 643 F.2d at 213).

"When considering the possible range of recovery, a court should keep in mind that 'compromise is the essence of settlement.'" *Welsh*, 2018 WL 7283639, at *13 (quoting *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 850 (E.D. La. 2007)). "This is because a settlement must be evaluated 'taking into account the uncertainty and risks involved in litigation' and 'in light of the

strength of the claims and possible defenses.'" *Welsh*, 2018 WL 7283639, at *13 (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 727 (E.D. La. 2008)).

As discussed in Section II(C)(4), the proposed Settlement will provide substantial and immediate benefits to the Class without the risks or delays of continued litigation. Moreover, had Plaintiffs' claims failed, they and the Class would have received *nothing at all*. Costly and time-consuming appeals and additional subsequent proceedings, including dispositive motions and class certification, are likely if this case proceeds on the litigation track. Given the challenges and difficulties Plaintiffs would face in protracted litigation, the proposed Settlement is well within the range of reasonable outcomes.

   **6.**   **Proposed Class Counsel Has Provided Competent and Knowledgeable Guidance in this Case, the Class Representatives Approve of the Settlement, and There is No Known Opposition to the Settlement at this Stage**

"[T]he opinion of class counsel [is] accorded great weight." *Welsh*, 2018 WL 7283639, at *14 (quoting *Klein*, 705 F. Supp. 2d at 649). "In reviewing the opinions of counsel, the Court is to bear in mind that counsel for each side possess the unique ability to 'assess the potential risks and rewards of litigation, and a presumption of correctness is said to attach to a class settlement reached in arms [sic] length negotiations between experienced, capable counsel after meaningful discovery.'" *Neff*, 179 F.R.D. at 211 (quoting *Lelsz v. Kavanagh*, 783 F. Supp. 286, 297 (N.D.Tex.1991)).

Proposed Class Counsel submit that the Settlement is fair, reasonable, and adequate based upon: (i) their extensive experience with other consumer class actions, which is further detailed below; (ii) their hands-on involvement in this litigation; (iii) their knowledge of the information that they reviewed in this case; (iv) their participation in arm's-length and adversarial negotiations in the full-day mediation with a highly regarded and experienced mediator; and (v) their

conversations with Class Members who have called and emailed their offices. *See Welsh*, 2018 WL 7283639, at *14.

a.     **Cafferty Clobes Meriwether & Sprengel LLP**

Cafferty Clobes Meriwether & Sprengel LLP ("Cafferty Clobes"), headquartered in Chicago, has over 25 years' experience leading, litigating and successfully resolving national consumer, antitrust, and other commercial class actions. *See* Herrera Decl., Ex. B.

For example, in *In re Insurance Brokerage Antitrust Litig.*, MDL No. 1663 (D.N.J. 2005), the court appointed Cafferty Clobes as one of two co-lead counsel in what was one of the largest antitrust and RICO class actions ever prosecuted in the United States.  That multidistrict class litigation involved dozens of national insurance company and insurance brokerage firm defendants that conspired to allocate customers and policies among preferred insurers in a complicated, national scheme to inflate premiums at the expense of policyholders.  In that case, the Court "assessed the qualification, experience and ability of Plaintiffs Class Co-Lead Counsel on [multiple] occasions, and each time determined that those attorneys are clearly 'well qualified and experienced class action attorneys who have been' involved in similar . . . litigation around the country.'" *In re Ins. Brokerage Antitrust Litig.,* MDL No. 1663, 2007 WL 542227, at *14 (D.N.J. Feb. 16, 2007) (quoting *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 250 (D. Del. 2002), *aff'd,* 391 F.3d 516 (3d Cir. 2004)).  Cafferty Clobes and co-lead counsel ultimately negotiated and secured settlements totaling well over $300 million during nine years of hard fought litigation involving many of the largest law firms in the country.

In the ensuing years, Cafferty Clobes has continued to vindicate consumers' rights in the scores of antitrust and consumer class actions in which it has served in leadership roles. *See, e.g.*, *In re Disposable Contact Lens Antitrust Litig.*, MDL No. 2626 (M.D. Fla (Cafferty Clobes serves

on Defendant Discovery Committee in action in which $36 million in settlements have been reached with three of five defendants while the parties prepare for trial); *In re Behr DeckOver Marketing, Sales Practices, and Products Liability Litig.*, No. 17-cv-4464 (N.D. Ill (uncapped settlement entitling class members to 75% of all documented repair costs); *Traxler v. PPG Indus., Inc.*, No. 15-cv-00912 (N.D. Ohio ($6.5 million settlement in deck resurfacer class action); *Sharp v. Watts Regulator Co.*, No. 8:16CV200, 2017 WL 1373860, at *3 (D. Neb. Apr. 13, 2017) ($10 million settlement); *Klug v. Watts Regulator Co.*, No. 8:15CV61, 2017 WL 1373857, at *3 (D. Neb. Apr. 13, 2017 ($4 million settlement). The firm continues to represent consumers as lead counsel in class cases throughout the country.  *See, e.g., Tangara, et al, v. General Motors LLC*, No. 4:17-cv-12786-MFL-EAS, ECF No. 10 (E.D. Mi. Oct. 19, 2017) (appointing Cafferty Clobes as co-lead counsel).

Most salient to the instant motion, Cafferty Clobes currently serves as lead or co-lead counsel in class cases that likewise challenge cancellations purportedly due to COVID-19. *See, e.g., Compo v. United Airlines, Inc., et al.*, No. 1:20-cv-02166 (N.D. Ill. *Menzel v. StubHub, Inc.*, No. CGC-20-584382 (Cal. Sup. Ct. San Fran. Co.) *In re Frontier Airlines Litig.*, No. 20-cv-01153-PAB-KLM (D. Colo.). Cafferty Clobes thus was well-positioned to litigate this action, and evaluate the merits of Plaintiffs' claims, SXSW's asserted defenses, and the value of the proposed Settlement relative to the benefits and risks of continued litigation.

There is no question but that and Cafferty Clobes is well-suited to help lead this action.

### b.    Sauder Schelkopf LLC

Sauder Schelkopf LLC has extensive experience litigating complex class actions throughout the United States. *See* Sauder Decl., Ex. A.  Its experience and expertise will ensure that Plaintiffs and Class Members are adequately represented.

Sauder Schelkopf LLC's attorneys have extensive experience in federal and state courts and, specifically, in complex class actions involving consumer fraud. Sauder Schelkopf also has significant experience in class actions involving contractual disputes. Recently, case highlights from Sauder Schelkopf include:

- *Cole et al. v. NIBCO, Inc*., No. 13-cv-7871-FLW-TJB (D.N.J.). Sauder Schelkopf served as Class Counsel and achieved a $43.5 million settlement against a plumbing product manufacturer related to a certain line of PEX products that were prone to leaking and causing substantial property damage. The settlement covered both out-of-pocket reimbursements for leaks as well as payments for replumbing costs.

- *In re: Hyundai and Kia Engine Litig.*, No. 17-cv-838 (C.D. Cal.). Preliminary approval granted to settlement covering approximately 4 million class vehicles and a settlement valued at over $800 million.

- *Jackson v. Viking Group, Inc.*, No. 8:18-cv-02356-PJM (D. Md.). Sauder Schelkopf served as Class Counsel and achieved a settlement valued between $30.45 million and $50.75 million in a case involving defective sprinklers that activated without the presence of a fire. The settlement included a free replacement program and a claims program to reimburse those who experienced non-fire activations.

### c.    Howry, Breen & Herman, L.L.P.

Howry, Breen & Herman, L.L.P. has extensive experience litigating consumer lawsuits, both within the Eastern District of Texas and throughout the State of Texas. *See* Howry Decl. ¶ 8, Ex. A. This experience includes *Scott Williams, et al. v. Centex Homes, Inc. f/d/b/a Centex Destination Properties, et al.*, cause number D-1-GN- 11-000994, in the 98th District Court of Travis County (regarding claims on behalf of homeowners against a developer for, among other things, failure to construct infrastructure), and *John J. Shine, et al. v. Behrens Subdivision, Ltd.*, et al., cause number GN 300609, in the 353rd District Court of Travis County (regarding claims on behalf of homeowners against a developer for, among other things, failure to construct certain improvements).

With this experience in mind, Proposed Class Counsel strongly recommend the proposed

Settlement because it ensures substantial compensation to the Class in lieu of a severely delayed resolution of Plaintiffs' Class claims. Sauder Decl. ¶ 7; Herrera Decl. ¶ 6; Howry Decl. ¶ 6.

### 7.    No Known Opposition to the Settlement Exists at this Stage

At this preliminary approval stage, there is no known opposition to the Settlement. Although Plaintiffs anticipate the Class will generally be pleased with the Settlement, they will respond to any concerns that may be raised during the settlement process.

## III.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

Rule 23(e) requires the "best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(e). "Under Rule 23(e), a settlement notice need only satisfy the 'broad reasonableness standards imposed by due process.'" *Welsh*, 2018 WL 7283639, at *8 (quoting *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197 (5th Cir. 2010)). "[R]eceipt of actual notice by all class members is required neither by Rule 23 nor the Constitution." *DeHoyos*, 240 F.R.D. at 296 (quoting *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 539 (N.D.Ga.1992)). "[N]otice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members[.]" *Telles*, 2018 WL 7352426, at *4. "These form requirements are in addition to, and not in lieu of, notice of a formal fairness hearing." *Id.*

As set forth in the Settlement Agreement, the Class Notice establishes a vigorous, informative and streamlined notice plan. ***First***, notice will be provided directly to those Class members through the email addresses provided to SXSW at the time of purchase. ***Second,*** should

any notice emails be returned as undeliverable, SXSW will attempt to contact such Class Member by calling the contact phone number provided by such Members to SXSW to obtain an alternate email address and then promptly send the notice to that email address. *Third*, if such Class Members do not provide an alternative email address, request notice by mail, or cannot be reached by phone after reasonable efforts, SXSW will send by U.S. Postal Service First Class Mail a Mailed Notice to the most current mailing address SXSW possesses for that Class Member. *Fourth*, SXSW will maintain a Settlement Website with Publication Notice posted, and which will also post a variety of information about the Settlement. SA § V(C)(3).

The Class Notice's various components satisfy due process. *See Lehmeyer v. Messerli & Kramer, P.A.*, No. CV 15-02419 (HB), 2016 WL 1576439, at *2 (D. Minn. Apr. 15, 2016) (approving notice and settlement self-administered by Defendant); *see also LaFlamme v. Carpenters Local No. 370 Pension Plan*, 212 F.R.D. 448, 459 (N.D.N.Y. 2003) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 356 (1978)) ("According to the Court in *Oppenheimer*, if a defendant can undertake the tasks associated with less expense and difficulty than could a plaintiff, the defendant may be ordered to provide notice."). This notice—direct notice to each and every Member of the Class—clearly will provide the best notice practicable because SXSW maintains the contact information of every purchaser of Credentials for the 2020 Festival. *See Welsh*, 2018 WL 7283639, at *8 (quoting *In re Lease Oil II*, 186 F.R.D. at 429); *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 595 (N.D. Ill. 2011).

The Class Notice provides the Class with critical information about the Settlement's terms in a clear and concise way and: (a) describes the nature of the action; (b) provides the definition of the Class certified; (c) describes the Settlement and how Class members can seek payments; (d) informs that a Class Member may enter an appearance through an attorney, if the Class member

so desires; (e) informs that the court will exclude anyone from the Class who requests exclusion as well as the time and manner for requesting exclusion; (f) informs Class members of the right to object and the time and manner for objecting; (g) explains the binding effect of a Class judgment on Class members; (h); discloses the intended fee application of Class Counsel; (i) provides the upcoming deadlines and the date and information about the Fairness Hearing; and (j) explains how to get more information about the case, settlement, notice, or rights under the Settlement Agreement. As such, the Class Notice program more than satisfy the requirements for Rule 23(e) and Due Process.

## <u>CONCLUSION</u>

Based upon the foregoing, and because the proposed Settlement is fair, reasonable, and adequate, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Approval of Settlement, Certification of a Settlement Class, Appointment of Class Counsel, and Related Relief.

Dated: September 24, 2021

Respectfully submitted,

HOWRY, BREEN & HERMAN, L.L.P.

*/s/ Randy Howry*
Randy Howry
State Bar No. 10121690
rhowry@howrybreen.com
Sean Breen
State Bar No. 00783715
sbreen@howrybreen.com
James Hatchitt
State Bar No. 24072478
jhatchitt@howrybreen.com
HOWRY BREEN &HERMAN, L.L.P.
1900 Pearl Street
Austin, Texas 78705-5408
Tel. (512) 474-7300
Fax (512) 474-8557

Joseph G. Sauder
jgs@sstriallawyers.com

29

Joseph B. Kenney
jbk@sstriallawyers.com
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
Tel. (888) 711-9975
Fax (610) 421-1326

Daniel O. Herrera
dherrera@caffertyclobes.com
Kaitlin Naughton
knaughton@caffertyclobes.com
CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP
150 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Tel. (312) 782-4880
Fax (312) 782-7785

Bryan L. Clobes
bclobes@caffertyclobes.com
CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP
205 North Monroe Street
Media, Pennsylvania 19063
Tel. (215) 864-2800
Fax (215) 964-2808

*Attorneys for Plaintiffs and the Putative
Class*

## **CERTIFICATE OF SERVICE**

I, Randy Howry, hereby certify that on this 24th day of September, 2021, I caused the foregoing to be filed using the Court's CM/ECF system, and thereby electronically served it upon all registered ECF users in this case.


By: _____ /s/ *Randy Howry* _____
        Randy Howry