IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARIA BROMLEY and KLEBER PAUTA, on behalf of themselves and all others similarly situated, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 1:20-CV-439-LY |
| SXSW LLC, and, SXSW HOLDINGS, INC., | § § § | |
| Defendants. | § § | |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND .................................................................................................. 2

    A.  Factual and Procedural Background ................................................................. 2

    B.  Class Counsel's Investigation and Discovery .................................................. 3

    C.  Settlement Negotiations ................................................................................... 4

    D.  Preliminary Approval of Settlement ............................................................... 5

III.  THE SETTLEMENT .......................................................................................... 5

    A.  The Class ......................................................................................................... 6

    B.  Payments to the Class ..................................................................................... 6

    C.  Separate Payment of Attorneys' Fees, Expenses, and Service Awards........... 7

    D.  Payment of Administrative Costs ................................................................... 7

    E.  Opt-Out and Objection Procedures ................................................................. 8

    F.  Release ............................................................................................................. 9

IV.   NOTICE HAS BEEN PROVIDED TO THE CLASS PURSUANT TO THE COURT-
APPROVED NOTICE PROGRAM ............................................................................ 9

    A.  Direct Notice to Class Members ..................................................................... 9

    B.  Settlement Website ......................................................................................... 11

V.    THE RESPONSE FROM THE CLASS HAS BEEN OVERWHELMINGLY POSITIVE . 11

VI.   ARGUMENT ..................................................................................................... 11

    A.  The Class Action Settlement Approval Process ............................................. 11

    B.  The Settlement is Fair, Reasonable, and Adequate, and Therefore, Should be Approved 12

        1.  The Settlement is the Product of Extensive, Arm's-Length, Non-Collusive Negotiations
(Reed Factor 1; Fed. R. Civ. P. 23(e)(2)(B))........................................................ 13

        2.  The Stage of the Proceedings and Discovery Produced Warrant Approval (Reed Factor
3)  ........................................................................................................................ 13

        3.  The Proposed Settlement Represents a Strong Result for the Class, Especially in Light
of the Risks, Complexities, and Likely Duration of Ongoing Litigation (Reed Factors 2, 4, 5;
Fed. R. Civ. P. 23(e)(2)(C))................................................................................. 15

        4.  The Recommendation of Experienced Counsel and the Positive Reaction from the Class
Favor Approval (Reed Factor 6).......................................................................... 17

        5.  Plaintiffs and Class Counsel have Zealously Represented the Class (Fed. R. Civ. P.
23(e)(2)(A))......................................................................................................... 18

        6.  The Settlement Treats Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D)) ........... 18

C.    The Court Should Reaffirm Certification of the Class ........................................ 18

   1.    The Requirements of Rule 23(a) are Satisfied ............................................. 19

     a. Numerosity (Rule 23(a)(1)) .................................................................... 19

     b. Commonality (Rule 23(a)(2)) ................................................................. 19

     c. Typicality (Rule 23(a)(3)) ...................................................................... 20

     d. Adequacy (Rule 23(a)(4)) ...................................................................... 21

   2.    The Requirements of Rule 23(b)(3) are Satisfied ........................................ 21

     a. Predominance (Rule 23(b)(3)) ................................................................ 22

     b. Superiority (Rule 23(b)(3)) ..................................................................... 22

VII.    CONCLUSION ........................................................................................................ 23

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................... 22

*Boos v. AT & T, Inc.*, 252 F.R.D. 319, 326 (W.D. Tex. 2008) ...................................................... 23

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ...................................................... 12, 17

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) ...................... 13, 15, 17, 18, 19, 20

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ...................................................... 12, 17

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891 (E.D. La. 2012) ...................................................... 17

*Neff v. VIA Metro. Transit Auth.*, 179 F.R.D. 185 (W.D. Tex. 1998) ............................... 14, 19, 20

*Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004) ...................................................... 14

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) ...................................................... 12, 13

*Serna v. Transp. Workers Union of Am., AFL-CIO*, No. 3:13-CV-2469-N, 2014 WL 7721824 (N.D. Tex. Dec. 3, 2014) ...................................................... 19

*Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316 (N.D. Tex. 2011) ............................................ 19

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ...................................................... 22

*Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ...................................................... 12, 13, 14, 17, 19, 22

**Statutes**

Fed. R. Civ. P. 23 ...................................................... 5, 6, 12, 13, 18, 19, 20, 21, 22

Plaintiffs Maria Bromley and Kleber Pauta (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through counsel, respectfully move this Court for Final Approval of the proposed Class Action Settlement ("Settlement").[1]

## I.    INTRODUCTION

This Court preliminarily approved the proposed Settlement reached by the Parties in this Action, and approved the Parties' proposed notice program on September 30, 2021. ECF No. 31. Notice has been disseminated to the Class as directed by the Court. By this Motion, Plaintiffs respectfully request that the Court conduct a final review of the Settlement, and approve the Settlement as fair, reasonable, and adequate.[2]

The proposed Settlement is the product of extensive, arm's-length negotiations between the Parties and their experienced and well-informed counsel, achieved through two mediation sessions with experienced mediator Dean Kilgore, and is fair, reasonable, and adequate given the benefits provided, the claims, and the Parties' respective positions and litigation risks.

Pursuant to the terms of the Settlement, Defendants SXSW, LLC and SXSW Holdings, Inc. (collectively, "SXSW") have agreed to compensate the Class[3] as follows:

(1) With respect to Members of the Class who accepted SXSW's offer to defer their Credential(s)[4] (the "Deferral Class"), SXSW will (a) issue a $30 cash payment per Credential purchased to each purchaser and (b) allow deferred Credentials and associated in-kind benefits to be used through the 2024 festival.

(2) Persons who did not accept SXSW's offer to defer their Credential(s) (the "Non-Deferral Class"), may elect to either (a) join the Deferral Class and obtain the benefits described above; or (b) receive a refund of 40% of the purchase price of their Credential(s).

---

[1] Capitalized terms have the same meanings as identified in the Settlement Agreement unless otherwise noted. The Settlement Agreement was submitted with Plaintiffs' Motion for Preliminary Approval of Settlement, Certification of a Settlement Class, Appointment of Class Counsel and Related Relief (ECF No. 29).

[2] The Fairness Hearing—when this Motion is scheduled to be heard—is set for February 18, 2022. ECF No. 31, at ¶ 17.

[3] The Deferral Class and Non-Deferral Class are referred to collectively herein as the "Class."

[4] The term "Credentials" means wristbands, tickets, passes, and badges, including tickets to attend the BBQ Crash Course and/or Taco Meet Up, purchased to attend the 2020 South by Southwest Conference & Festivals.

Additionally, SXSW has agreed to pay, subject to Court approval, a total of $400,000 in attorneys' fees, costs, and expenses to Class Counsel in addition to the compensation provided to the Class. Thus, the benefits provided to the Class will not be reduced by the payment of attorneys' fees, costs, and expenses.[5] Moreover, the Settlement provides for a robust procedure for providing notice, including direct e-mailed and mailed notice to Class Members, which has already been implemented by the Settlement Administrator and the Parties.

The Settlement represents a strong result for the Class, as reinforced by, *inter alia*, the very positive reaction from the Class thus far. The deadline for Class Members to opt-out or object was December 20, 2021. As of January 4, 2022, only eleven persons have requested to be excluded from the Class and no one has objected.

For the foregoing reasons and those detailed below, the proposed Settlement meets the standards for final settlement approval and should be approved.

## II.    BACKGROUND

### A.    Factual and Procedural Background

SXSW has for decades organized and overseen the South by Southwest Conference and Festivals, a related series of events, programs, and panels hosted annually in Austin, Texas. However, due to concerns relating to the COVID-19 pandemic, the 2020 iteration of the South by Southwest Conference and Festivals (the "2020 Festival"), scheduled for March 13-22, 2020, was cancelled. After the cancellation of the 2020 Festival, Plaintiffs and other purchasers requested refunds from SXSW for their Credentials,[6] but SXSW declined on grounds that its Participation

---

[5] SXSW has also agreed to separately pay service awards to the two Plaintiffs, subject to Court approval, as well as the costs of Notice and Settlement administration.

[6] Credentials for the South by Southwest festival's 2020 iteration ranged from approximately $30-$300 for specific film, gaming, and music events; $225-$595 for SXSW EDU, an education-focused conference that takes place

& Credential Terms and Conditions ("PCT&C") included a "no refund" provision. In lieu of refunds, and in exchange for a release of all claims relating to the 2020 Festival's cancellation, SXSW offered customers the option to defer their 2020 Credentials to either the 2021, 2022, or 2023 festival, as well as 50% off Credentials to one alternate year of their choosing within that timeframe.

Plaintiffs declined the deferral offer, and, on April 24, 2020, brought suit on behalf of themselves and all other persons who purchased Credentials for the 2020 Festival. ECF No. 1. Plaintiffs brought claims for breach of contract, unjust enrichment, and conversion, and demanded a refund of all monies paid for Credentials to the 2020 Festival. *See id.* SXSW answered the Complaint on June 16, 2020. ECF No. 15.

Shortly thereafter, the Parties worked to schedule their Rule 26(f) conference. During that conference, the Parties recognized their mutual interest in exploring an early resolution, further discussed *infra*.  Meanwhile, the Parties submitted their proposed Scheduling Order to the Court on July 29, submitted a proposed Confidentiality and Protective Order on August 10, ECF No. 18, which the Court granted on August 11, 2020. ECF No. 19, and appeared for an initial status conference on August 25.

### B.    Class Counsel's Investigation and Discovery

Prior to filing suit, and continuing through the course of the litigation, Class Counsel conducted an extensive investigation into pertinent factual and legal issues. These investigative efforts included analyzing SXSW's PCT&Ts and Deferral Offer, reviewing materials about SXSW's alleged practices, and conducting follow-up investigations regarding the same, including speaking with putative Class Members about their experiences. Declaration of Daniel O. Herrera

---

contemporaneously with the broader festival; and $325-$1,725 for "badges" that provide "primary entry to programming associated with their badge type and … secondary access to most other" festival events.

in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Herrera Decl.") at ¶ 3. Class Counsel also thoroughly researched and analyzed the legal issues implicated in the Class' claims and SXSW's potential defenses. *Id.*

The Parties also engaged in confirmatory discovery, which informed their views regarding the relative strengths and weaknesses of their respective positions and provided them with the information needed to inform an initial demand and negotiate the Settlement. Specifically, Plaintiffs served on SXSW narrow requests for data and information for evaluating the size of the putative Class and the damages suffered thereby, as well as the merits of both the Class' claims and SXSW's defenses, including SXSW's assertion that many Class Members released SXSW from liability by accepting its deferral offer. SXSW produced the information Plaintiffs requested on August 20, 2020—including sales and deferral data, and exemplar Class Member communications and releases—and supplemented its production on September 11 and November 4. The Parties further discussed SXSW's productions on several occasions, which allowed the Parties to exchange informed settlement proposals. Herrera Decl. at ¶¶ 6-7.

### C.    Settlement Negotiations

This proposed Settlement is the product of hard-fought, intensive, arm's-length negotiations between the Parties. SXSW's production of data, documents, and information allowed the Parties to exchange settlement proposals and counterproposals on October 8 and 28, and November 11, with confidence that they thoroughly evaluated the merits of both the Class' claims and SXSW's defenses, as well as the size of the putative Class and the nature and amount of damages suffered. Herrera Decl. at ¶ 7.

On October 30, 2020, Plaintiffs and SXSW jointly filed their Alternative Dispute Resolution Report informing this Court that court-ordered ADR was not necessary at that point.

ECF No. 24. However, the Parties later concluded that mediation would aid their ongoing settlement discussions. Accordingly, on December 17, 2020, Plaintiffs and SXSW participated in a full day mediation conducted by Dean Kilgore using the Zoom videoconferencing platform, during which the Parties continued to exchange information addressing the relative strengths and weaknesses of their claims and defenses, as well as the nature and extent of recoverable damage. Herrera Decl. at ¶ 9. After more than ten hours of mediation, the Parties reached agreement on the material terms of the proposed class action Settlement. *Id.* Only after the Parties reached an agreement in principle as to Class relief did they begin to negotiate attorneys' fees, costs, and expenses—matters that required a separate half-day mediation with the mediator. Herrera Decl. at ¶ 10. That second mediation session, which took place on July 27, 2020, ultimately produced an agreement on attorneys' fees, costs, and expenses, subject to Court approval. After each mediation session, the Parties worked diligently to draft the settlement agreement and exhibits, including the proposed notice program. *Id.*

### D.  Preliminary Approval of Settlement

On September 30, 2021, this Court preliminarily approval the proposed Settlement, provisionally certified the proposed Class for Settlement purposes, and directed that class notice, under Fed. R. Civ. P. 23(e), be disseminated pursuant to the Parties' proposed notice program. ECF No. 31.

### III.  THE SETTLEMENT

The full settlement terms are set forth in the Settlement Agreement, which was attached as Exhibit A to the previously-filed Declaration of Daniel O. Herrera in Support of Plaintiffs' Motion for Preliminary Approval of Settlement. ECF No. 29-2. The following is a summary of the material Settlement terms.

### A.    The Class

The Class, as provisionally certified by the Court, is defined as:

**The Class:**

All persons, wherever located, who purchased Credentials for the 2020 South by Southwest Conference and Festivals in Austin, Texas, pursuant to the Participation and Credentials Terms and Conditions ("PCT&C") (Exhibit 1 to the Settlement Agreement). The Class includes both the Deferral Class and the Non-Deferral Class, defined below.

**The Deferral Class:**

Members of the Class who accepted SXSW's offer to defer their Credential(s) purchased to attend the 2020 South by Southwest Conference & Festivals ("the Deferral Offer").

**The Non-Deferral Class:**

Members of the Class who did not accept the Deferral Offer.

Excluded from the Class are all claims for death, personal injury, property damage, and subrogation. Also excluded from the Class are all purchasers of Credentials who pursued and won a chargeback through their credit card company and received a refund of their payment to SXSW for such Credentials; businesses or government agencies that obtained Credentials from SXSW's Sales, Special Projects, and/or Sponsorship departments as part of their purchase of exhibition, marketing, trade and/or sponsorship packages; SXSW; any affiliate, parent, or subsidiary of SXSW; any entity in which SXSW has a controlling interest; any officer, director, or employee of SXSW; any successor or assign of SXSW; any judge to whom this Action is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons.

Settlement Agreement ("SA") § I. The Class is an opt-out class under Rule 23(b)(3).

### B.    Payments to the Class

Each Deferral Class Member will receive $30.00 per Credential purchased, may now defer their 2020 Credentials to any future SXSW festival through 2024, and may purchase an equal number of Credentials to one alternate year between 2022 and 2024, other than for the year to which they deferred their original Credential(s), at 50% off the walk-up rate. SA § III(A). Each

Non-Deferral Class Member will be entitled to choose between joining and obtaining the same relief as the Deferral Class, or receiving a refund equal to 40% of the purchase price of their Credentials. SA § III(B). Non-Deferral Class Members had until December 20, 2021 to decide whether to join the Deferral Class. SA § V(D). Payments to both the Deferral Class and the Non-Deferral Class shall be made within 60 days following the Effective Date. SA § IV(A). Any person who purchased a ticket to attend the BBQ Crash Course or Taco Meet Up events pursuant to the PCT&C will receive a 100% refund of those payments. SA § III(C).

### C.    Separate Payment of Attorneys' Fees, Expenses, and Service Awards

SXSW has also agreed to pay, subject to Court approval, a total of $400,000 in attorneys' fees, costs, and expenses to Class Counsel. SA § VI(1). Considering their greater involvement in the litigation and settlement process, Class Counsel's application for attorneys' fees and expenses also requests Service Awards of $2,000 for each Plaintiff ($4,000 total). SA § VI(2). Any attorneys' fees, costs, expenses, and service awards awarded by the Court will be paid by SXSW in addition to the payments that will be distributed to the Class, and thus, will not reduce the payments to Class Members. The bases for Plaintiffs' and Class Counsel's requested fees, expenses, and service awards are addressed in their Motion for Attorneys' Fees, Expenses, and Service Payments to the Class Representatives, filed on December 6, 2021 (ECF No. 33), which the Court granted on December 15, 2021. ECF No. 34.

### D.    Payment of Administrative Costs

SXSW self-administered the Settlement and the associated notice program, and paid, and will continue to pay, all associated costs. SA § III(D). SXSW retained, with the consent of Class Counsel, JND Legal Administration, a well-regarded claims administrator, to consult and assist SXSW with, among other things, preparing the Settlement Website; preparing and sending notices

to the Class; and assisting SXSW with receiving and processing claims forms and paying claims. And although SXSW self-administered the Settlement, Class Counsel availed themselves of their audit rights in order to ensure that Settlement administration was affected consistent with the proposed Settlement Agreement. *See infra.*

SXSW's responsibilities include, and continue to include: (a) sending notice; (b) conducting reasonable searches for Class Member email and current mailing addresses; (c) mailing any notices returned as undeliverable; (d) processing claims; (e) sending payments to Class Members; (f) processing opt-out requests; and (g) providing reports about the claims process. SA §§ III(D), IV, V.

### E.    Opt-Out and Objection Procedures

Any person within the Class definition was permitted to request exclusion from the Class by sending a signed written request, including their contact information (full name, current email and mailing address) and stating their desire to be excluded, postmarked or delivered by the opt-out deadline of December 20, 2021. SA § IX; ECF No. 31, at ¶ 14.

Any Class Member who did not submit a timely and valid exclusion request was permitted to object to the Settlement, Class Counsel's application for attorneys' fees and expenses, and/or the request for Class Plaintiff service awards. SA § X; ECF No. 31, at ¶ 15. To be considered, the Court's Order preliminarily approving the Settlement required that objections be submitted in writing, postmarked by the objection deadline of December 20, 2021, and include the following information: (i) full name and current address, email address, and telephone number; (ii) a statement of the objection(s), including all factual and legal grounds for the position; (iii) copies of any documents the objector wished to submit in support; and (iv) the objection's date and the Class Member's signature. *Id.* The Court's Order also required any Class Member objecting to the

Settlement to provide a list of any other objections submitted by the objector, or the objector's counsel, to any class action settlements submitted in any court, whether inside or outside the United States, during the previous five years. *Id.* If the Class Member or his or her counsel had not made any such prior objection, the Class Member was to affirmatively state that in the written materials provided with the objection. *Id.* Lastly, if the objecting Class Member intended to appear, in person or by counsel, at the Fairness Hearing, the Order required them to make their intent known in their written submission. *Id.*

### F.    Release

Upon final approval of the Settlement, all Class Members will release all of their potential claims relating to their purchase of 2020 South by Southwest Credentials. *See* SA § VII.

## IV.    NOTICE HAS BEEN PROVIDED TO THE CLASS PURSUANT TO THE COURT-APPROVED NOTICE PROGRAM

The notice program approved by the Court in the Preliminary Approval Order, ECF No. 31, has been, and is being, implemented by the Parties and the Settlement Administrator. The Court-approved notice program included direct e-mailed and mailed notice to the Class Members, and a dedicated Settlement Website (https://www.sxswsettlement.com/). Herrera Decl. at ¶¶ 13-15.

### A.    Direct Notice to Class Members

1.    Pursuant to the Court-approved notice program, the Parties implemented a notice program designed to provide the best notice practicable under the circumstances, and which satisfied both Rule 23 and due process. Because all 2020 Credentials were purchased online and delivered by email, each Class Member provided SXSW with a valid email address at the time of purchase. SXSW delivered notice of the proposed Settlement to each Class Member at that email address. In the event email notice was returned as undeliverable, SXSW attempted to contact the

Class Member by calling the contact phone number provided to SXSW to obtain an alternate email address. If such Class Members did not provide an alternative email address, request notice by mail, or could not be reached by phone after reasonable efforts, SXSW sent by U.S. Postal Service First Class Mail a Mailed Notice to the most current mailing address SXSW has for that Class Member. Further, prior to disseminating notice, SXSW established a Settlement Website to provide information to Class Members about the terms of the proposed Settlement and their rights thereunder, as well as dates, deadlines, and related information. SA § V(C).  Herrera Decl. at ¶ 13. On November 18, 2021, SXSW informed Class Counsel that approximately 19,880 notices were sent by email and 899 notices were sent by U.S. mail. Herrera Decl. at ¶ 14.[7]

The proposed Settlement also provides for a streamlined claims process. Each of the Emailed Notice, Mailed Notice, and the Notice Website directly linked Class Members to the online Claim Form, which: (i) displayed the Class Member's 2020 SXSW credential purchase(s) by credential purchased, registrant, deferral status (if any), and amount(s) paid; (ii) required the Class Member to certify that they are the purchaser of the 2020 SXSW credentials displayed or are acting with the purchaser's knowledge and consent; (iii) requested the Class Member to identify the preferred method of payment as offered in the Class Benefits; (iv) provided Non-Deferral Class Members the opportunity to choose to join the Deferral Class and receive Deferral Benefits as to each credential purchased; (v) displayed the Class Benefits elected to be received by the Class Member; and (vi) required the Class Member to confirm their choice(s) by clicking an "I Agree" button in order to submit their Claim Form. SA § V(D)(1). Herrera Decl. at ¶ 15.

As of the claim deadline, 4,304 claims were filed—a figure equivalent to 21.6% of Deferred Credentials, 26.8% of Non-Deferred Credentials, and 28.4% of add-on Credentials.

---

[7] On November 18, 2021, SXSW reported to Class Counsel the total number of notices disseminated and the methods by which they were issued, as the Preliminary Approval Order required. ECF No. 31, at ¶ 12.

Herrera Decl. at ¶ 16.

### B.    Settlement Website

The Settlement Administrator also timely established a Settlement Website, https://www.sxswsettlement.com/, where Class Members can obtain further information about the case and the proposed Settlement, and view key case documents, including the Settlement Agreement. SA § V(C). Herrera Decl. at ¶ 13.

## V.    THE RESPONSE FROM THE CLASS HAS BEEN OVERWHELMINGLY POSITIVE

The response from the Class thus far has been extremely positive. The opt-out and objection deadlines passed on December 20, 2021, and only eleven persons requested to be excluded from the Class, and none objected.  Herrera Decl. at ¶ 17.

## VI.    ARGUMENT

### A.    The Class Action Settlement Approval Process

Pursuant to Rule 23(e), a proposed class action settlement must be approved by the court before it can become effective. The process for court approval is comprised of three principle steps:

(1) Preliminary approval of the proposed settlement and direction to disseminate notice to the class, after submission to the court of a written motion for preliminary approval;

(2) Dissemination of notice to the class; and

(3) Final approval of the proposed settlement, after submission to the court of a written motion for final approval and a final approval hearing, at which evidence and argument concerning the fairness, adequacy, and reasonableness of the proposed settlement are presented.

In granting preliminary approval of the proposed Settlement and directing that notice be disseminated to the Class, the Court took the first step in the process, and the Parties have taken the second step by implementing the Notice program directed by the Court. ECF No. 31; Herrera

Decl. at ¶¶ 13-15. By this motion, Plaintiffs respectfully request that the Court take the third and final step in the settlement approval process: granting final approval of the proposed Settlement.

**B.    The Settlement is Fair, Reasonable, and Adequate, and Therefore, Should be Approved**

The Fifth Circuit—like its sister Circuits—has a long-standing policy that favors the settlement of class action litigation. *See In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (finding an "overriding public interest in favor of settlement that we have recognized [p]articularly in class action suits") (internal citation and quotation marks omitted); *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."). The touchstone for the class settlement approval analysis is whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

In assessing whether a settlement is fair, reasonable, and adequate, the Court is to consider six factors, known as the "*Reed* factors." *See Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639, at *11 (W.D. Tex. Aug. 20, 2018) (citing *Union Asset Mgmt. Holding A.G. v. Dell Inc.*, 669 F.3d 632, 639 (5th Cir. 2012)). The *Reed* factors are:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *Deepwater Horizon*, 739 F.3d at 820.

Additionally, Federal Rule of Civil Procedure 23(e)(2) establishes factors for the Court's consideration which overlap considerably with the *Reed* factors. Rule 23(e)(2) requires courts to consider whether: (A) "the class representatives and class counsel have adequately represented the

class;" (B) "the proposal was negotiated at arm's length;" (C) "the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal[,]" "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims[,]" "the terms of any proposed award of attorney's fees, including timing of payment[,]" and "any agreement required to be identified under Rule 23(e)(3);" and (D) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

As discussed below, the proposed Settlement here is fair, reasonable, and adequate under the circumstances of this case and easily satisfies all applicable standards for final approval.

### 1.    The Settlement is the Product of Extensive, Arm's-Length, Non-Collusive Negotiations (Reed Factor 1; Fed. R. Civ. P. 23(e)(2)(B))

There is a strong presumption of fairness when a proposed class action settlement is reached through arm's-length negotiations between experienced counsel. *See Welsh*, 2018 WL 7283639, at *12 ("Courts may presume that a proposed settlement is fair and reasonable, and lacking fraud or collusion, when it is the result of arms-length negotiations."); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007) (same). In addition, "[t]here is … a presumption [that] no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *DeHoyos*, 240 F.R.D. at 287.

Here, the Settlement is the product of hard-fought, arm's-length negotiations between the Parties and their experienced and well-informed counsel. The Parties engaged in extensive negotiations and multiple mediation sessions conducted by an experienced and well-respected mediator—Dean Kilgore—and were ultimately able to reach an agreement with the help of Mr. Kilgore. Throughout the negotiations, the Parties were represented by counsel with extensive experience in the prosecution, defense, and settlement of class actions and other complex matters.

### 2.    The Stage of the Proceedings and Discovery Produced Warrant Approval (Reed Factor 3)

"In applying this factor, courts ask whether the parties have obtained sufficient information to evaluate the merits of the competing positions … and whether the parties have obtained sufficient information about the strengths and weaknesses of their respective cases to make a reasoned judgment about [settlement][.]"  *Welsh*, 2018 WL 7283639, * 14 (internal citation and quotation marks omitted). The Parties here were well-informed, and thus well-situated to evaluate the strengths and weaknesses of their respective positions and to negotiate the Settlement. *See Neff v. VIA Metro. Transit Auth.*, 179 F.R.D. 185, 209 (W.D. Tex. 1998) (citing *Cotton*, 559 F.2d at 1332–33) ("Sufficiency of information does not depend on the amount of formal discovery that has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed."). As the Fifth Circuit explained: "[t]he overriding theme of our caselaw is that formal discovery is not necessary [for Settlement] as long as (1) the interests of the class are not prejudiced by the settlement negotiations and (2) there are substantial factual bases on which to premise settlement." *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004).

As discussed above (*see* Section II(B), *supra*), the proposed Settlement here is informed by Class Counsel's thorough investigation and considerable research, investigation and confirmatory discovery regarding the legal and factual issues in the litigation. Before filing the case, Class Counsel conducted an extensive investigation into the facts underlying and supporting the Class' claims and the applicable law. Plaintiffs also developed an informed understanding of this case through confirmatory discovery—which allowed them to value the Class' damages and evaluate the merits of SXSW's defenses—as well as a thorough independent investigation conducted primarily through interviews with both Plaintiffs and the many absent Class Members who contacted Class Counsel for advice and assistance. They carefully reviewed the

communications, documents, and data produced by SXSW and, as a result, were able to engage in meaningful, fully-informed settlement negotiations. Herrera Decl. at ¶¶ 6-7. Having previously brought many similar class actions, and having reviewed SXSW's productions, Class Counsel were able to meaningfully assess the strengths and weaknesses of Plaintiffs' case. Class Counsel were, therefore, in an excellent position to evaluate the merits of the proposed Settlement against the risks and costs associated with continued litigation.

      **3.**      ***The Proposed Settlement Represents a Strong Result for the Class, Especially in Light of the Risks, Complexities, and Likely Duration of Ongoing Litigation (Reed Factors 2, 4, 5; Fed. R. Civ. P. 23(e)(2)(C))***

      In evaluating the merits of a proposed class action settlement, the Western District of Texas has recognized it is important to be mindful of "the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *DeHoyos*, 240 F.R.D. at 291 (internal citation omitted).

      This proposed Settlement strikes a compromise that affords fair compensation to Class Members while eliminating any risk of loss. Under the Settlement, Members of the Deferral Class—persons whom the Court may have determined released any and all claims against SXSW arising from the 2020 Festival because they accepted SXSW's deferral offer—will receive $30.00, and can now defer their Credentials (and purchase an additional Credential at 50% of the walk-up rate for a different year) through 2024. The Settlement likewise provides substantial and meaningful relief to Members of the Non-Deferral Class, who may either elect to receive reimbursement for 40% of the purchase price of their Credentials, or join the Deferral Class and obtain the same relief to which Deferral Class members are entitled. Moreover, absent settlement, if Plaintiffs' claims failed, they and the Class would have received nothing at all.

      The Settlement also provides a significant benefit that would not be available if the

litigation were to continue—prompt relief. Proceeding to trial could take years, significantly deferring the resolution of this litigation, given the legal and factual issues raised and likelihood of appeals. If litigation proceeded absent settlement, SXSW would hotly contest class certification and liability. SXSW would likely contend that a majority of the members of the putative Class that Plaintiffs sought to certify accepted SXSW's deferral offer and granted a release, thus barring any claims on their behalf due to accord and satisfaction, waiver, and release. Even if a Class were certified, SXSW would likely maintain that Plaintiffs could not prove the essential element of breach because they knowingly assented to SXSW's PCT&T, which expressly provided that Credentials were non-refundable. And even had Plaintiffs convinced this Court to sever the no-refund provision, SXSW likely would have argued that because the City of Austin cancelled the 2020 Festival, performance under the PCT&T was impossible, illegal, and/or impracticable, relieving SXSW of its contractual obligations. Indeed, these are the very affirmative defenses SXSW raised in their Answer. *See* ECF No. 15, at 8.

Moreover, even had the Court certified the Class, SXSW presumably would have moved to decertify the Classes or pursued an interlocutory appeal before the Fifth Circuit. Additional litigation likely would have included: (1) dispositive motions filed by both Plaintiffs and SXSW; (2) extensive pretrial filings; (3) a lengthy trial; (4) post-trial proceedings in this District Court; and (5) further appeals.

While Plaintiffs believe that these obstacles are not insurmountable, they are indicative of the substantial risks that Plaintiffs and the proposed Class would face if the litigation were to continue. The proposed Settlement provides considerable, appropriately tailored relief while allowing Class Members to avoid the risks of unfavorable, and in some cases dispositive, rulings on these and other issues. The proposed Settlement is, therefore, well within the range of

reasonable outcomes.

    **4.**    ***The Recommendation of Experienced Counsel and the Positive Reaction from the Class Favor Approval (Reed Factor 6)***

"[T]he opinion of class counsel [is] accorded great weight." *Welsh*, 2018 WL 7283639, at *14 (quoting *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010)); *see also Cotton*, 559 F.2d at 1330 (stating in "evaluating the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties"); *DeHoyos*, 240 F.R.D. at 292 (concluding class counsel's opinion "is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims").

    Class Counsel in this case have extensive experience litigating and resolving class actions and other complex matters, conducted discovery in the instant case, and have extensively investigated the factual and legal issues raised. Herrera Decl. at ¶¶ 3, 5-7, 19. Based on their experience and knowledge, Class Counsel weighed the benefits of the Settlement against the inherent risks, complexities, and expense of continued litigation, and concluded that the proposed Settlement is fair, reasonable, and adequate. Herrera Decl. at ¶ 19.

    The Class' positive reaction to the proposed Settlement also supports approval. Notice of the proposed Settlement was e-mailed and mailed directly to Class Members, with approximately 19,880 notices sent by email and 899 notices sent by U.S. mail. Herrera Decl. at ¶ 14. The deadline for Class Members to opt-out or object was December 20, 2021, yet only eleven persons have requested to be excluded from the Class and no objections have been filed. Herrera Decl. at ¶ 17; *see In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891, 938 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ("one indication of the fairness of a settlement is the lack of or a small number of objections") (internal

citation omitted); *DeHoyos*, 240 F.R.D. at 293 ("the minimal level of opposition from absent class members weighs in favor of approving the settlement.").

In addition, pursuant to 28 U.S.C. § 1715, notice of the proposed Settlement was also sent to the appropriate officials, *see* ECF No. 32, none of whom expressed concerns. Herrera Decl. at ¶ 18.

> **5.    Plaintiffs and Class Counsel have Zealously Represented the Class (Fed. R. Civ. P. 23(e)(2)(A))**

Plaintiffs and Class Counsel have prosecuted this action on behalf of the Class with vigor and dedication. As detailed above, Class Counsel have thoroughly researched and investigated the factual and legal issues involved, conducted discovery, and further prosecuted the claims pled. Likewise, Plaintiffs themselves were actively engaged—each communicated regularly with Class Counsel up to and including evaluating and approving the proposed Settlement. Herrera Decl. at ¶ 4.

> **6.    The Settlement Treats Class Members Equitably (Fed. R. Civ. P. 23(e)(2)(D))**

The proposed Settlement does not grant preferential treatment to the Plaintiffs or to any segment of the Class. Class representative service awards, such as the modest awards requested for the two named Plaintiffs here, are commonly awarded in class actions, are well-justified under the circumstances, and are appropriate in amount given each Plaintiffs' commitments and efforts in supporting the litigation. *See* ECF No. 33.

### C.    The Court Should Reaffirm Certification of the Class

The Court previously provisionally certified the Class as part of the Preliminary Approval Order. ECF No. 31, at ¶¶ 3-5. The Court should reaffirm certification of the Class, for settlement purposes, in conjunction with final approval of the proposed Settlement, because the standards of Rule 23(a) and Rule 23(b)(3) are satisfied. Importantly, no Class members have objected to the

Court's preliminary approval Order provisionally certifying the Class.

### 1.    The Requirements of Rule 23(a) are Satisfied

Rule 23(a) requires that any proposed class meet four prerequisites: numerosity, commonality, typicality, and adequacy of representation. The proposed Class satisfies each element.

### a.    Numerosity (Rule 23(a)(1))

The Class satisfies the numerosity requirement of Rule 23(a)(1) because it "is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). "There is no magic number of class members required to satisfy Rule 23(a)'s numerosity requirement." *Serna v. Transp. Workers Union of Am., AFL-CIO*, No. 3:13-CV-2469-N, 2014 WL 7721824, at *2 (N.D. Tex. Dec. 3, 2014) (internal citation omitted).

Numerosity is readily satisfied here where the proposed Class includes approximately 20,000 purchasers, making joinder impracticable. *See Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 324 (N.D. Tex. 2011) (concluding that a settlement class that included at least 650 investors was sufficient to satisfy the numerosity requirement); *see also Neff*, 179 F.R.D. at 193 (finding that a settlement class that included at least 12,000 individuals was sufficient to satisfy the numerosity requirement).

### b.    Commonality (Rule 23(a)(2))

Likewise, there are "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). "The commonality requirement . . . mandates there be at least one factual or legal issue which is common to all or substantially all of the class members." *DeHoyos*, 240 F.R.D. at 280. This standard is met when "there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Welsh*, 2018 WL 7283639, at *5 (quoting

*Lightbourn v. Cnty. of El Paso*, 118 F.3d 421, 426 (5th Cir. 1997)).

This case raises multiple common questions of law and fact, including whether SXSW should be required to provide refunds for the 2020 Festival; whether SXSW breached the PCT&C by refusing to issue refunds for the 2020 Festival; whether SXSW's Refund and Revocation Policy is severable from the PCT&C; whether SXSW was unjustly enriched by its conduct; and whether SXSW has converted monies Plaintiffs and the Class paid for Credentials. *See* ECF No. 1, at ¶ 50; ECF No. 29, at 10. Underlying these common questions is a common nucleus of operative facts: the cancellation of the 2020 Festival and SXSW's subsequent refusal to provide refunds to the Class. Because these central issues are common to all Class members, commonality is satisfied here.

### c.    Typicality (Rule 23(a)(3))

Rule 23(a)(3) requires "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). "[R]ule 23(a)(3)'s typicality requirement 'is satisfied when each class member's claim arises from the same [common] course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *DeHoyos*, 240 F.R.D. at 282 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir.1993)). "This requirement . . . is not demanding." *Neff*, 179 F.R.D. at 194 (citing *Celestine v. Citgo Petroleum Corp.*, 165 F.R.D. 463, 467 (W.D. La. 1995)).

Here, typicality is satisfied because Plaintiffs' claims and those of the Class they seek to represent derive from the same operative facts: Plaintiffs and Class Members all purchased Credentials for the 2020 SXSW Festival and incurred damages as a result. Further, the claims of both Plaintiffs and the Class are based on the same legal theories: SXSW's breach of contract, unjust enrichment, and conversion. Plaintiffs' claims clearly are typical of those of the Class.

### d.    Adequacy (Rule 23(a)(4))

Rule 23(a)(4) examines: "[1] the zeal and competence of the representative[s'] counsel and [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees." *DeHoyos*, 240 F.R.D. at 282 (internal citation omitted). This is easily satisfied here, because Plaintiffs and Class Counsel have (and will continue to) "fairly and adequately protect the interests of the class[,]" as required by Rule 23(a)(3). Fed. R. Civ. P. 23(a)(4).

Class Counsel here have extensive experience litigating and resolving class actions and other complex matters, Declaration of Joseph G. Sauder in Support of Plaintiffs' Motion for Preliminary Approval of Settlement, ECF No. 29-1, at Exhibit A; Declaration of Daniel Herrera in Support of Plaintiffs' Motion for Preliminary Approval of Settlement, ECF No. 29-2, at Exhibit B; Declaration of Randy Howry in Support of Plaintiffs' Motion for Preliminary Approval of Settlement, ECF No. 29-3, and, as this Court previously concluded, are well qualified to represent the Class. Since filing this case, Class Counsel have vigorously litigated this action on behalf of the Class, conducted a thorough investigation and discovery, negotiated the proposed Settlement, and have and will continue to fairly and adequately protect the interests of the Class. Herrera Decl. at ¶¶ 3, 5-12, 19. Likewise, Plaintiffs have demonstrated their commitment to the Class, including by regularly communicating with Class Counsel about the case and their allegations, and reviewing and approving the proposed Settlement. Herrera Decl. at ¶ 4. Finally, Plaintiffs' interests are aligned with and are not antagonistic to the interests of the Class. Plaintiffs and Class Members share an interest in obtaining relief from SXSW.

### 2.    *The Requirements of Rule 23(b)(3) are Satisfied*

In addition to the requirements of Rule 23(a), at least one of the prongs of Rule 23(b) must

be satisfied. Here, certification is proper under Rule 23(b)(3), which requires that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a.    Predominance (Rule 23(b)(3))

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal citation and quotation marks omitted).

Common questions predominate here. Not only do the Class Members' claims all arise under Texas law and from the same alleged conduct governed by the same terms and conditions, but if the proposed Settlement is finally approved, there will be no need for a trial, meaning there are no potential concerns about any potential individual issues creating trial inefficiencies. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there will be no trial.").

### b.    Superiority (Rule 23(b)(3))

The superiority requirement examines whether class treatment is superior to other methods for the resolution of the case. "Rule 23(b)(3) is the best method of adjudication for situations … in which the potential recovery is 'typically so small . . . that litigation of a single claim is, as a general matter, hardly worth the cost and effort of litigation.'" *Welsh*, 2018 WL 7283639, at *7

(*Chakejian v. Equifax Info. Servs*. LLC, 256 F.R.D. 492, 501 (E.D. Pa. 2009)). Indeed, class action treatment is appropriate where, as here, class members would be unlikely to bring their own claims. *See Boos v. AT & T, Inc.*, 252 F.R.D. 319, 326 (W.D. Tex. 2008), *modified* (Sept. 17, 2008) ("this Court is skeptical that all of the potential class members would undertake the time and expense required to bring individual . . . claims.").

Given the size of each Class Members' damages, they would be unlikely to pursue individual claims. Moreover, it would be far more efficient for the Court and the Parties to have a single resolution (as with the proposed Settlement here), rather than having to litigate multiple separate cases raising and requiring resolution of the same issues.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement.

Dated: February 4, 2022                        Respectfully submitted,

HOWRY, BREEN & HERMAN, L.L.P.


/s/ *Randy Howry*
Randy Howry
State Bar No. 10121690
rhowry@howrybreen.com
Sean Breen
State Bar No. 00783715
sbreen@howrybreen.com
James Hatchitt
State Bar No. 24072478
jhatchitt@howrybreen.com
HOWRY, BREEN &HERMAN, L.L.P.
1900 Pearl Street
Austin, Texas 78705-5408
Tel. (512) 474-7300
Fax (512) 474-8557

Joseph G. Sauder
jgs@sstriallawyers.com
Lori G. Kier
lgk@sstriallawyers.com
Joseph B. Kenney

jbk@sstriallawyers.com
SAUDER SCHELKOPF LLC
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
Tel. (888) 711-9975
Fax (610) 421-1326

Daniel O. Herrera
dherrera@caffertyclobes.com
Kaitlin Naughton
knaughton@caffertyclobes.com
CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Tel. (312) 782-4880
Fax (312) 782-7785

Bryan L. Clobes
bclobes@caffertyclobes.com
CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP
205 North Monroe Street
Media, Pennsylvania 19063
Tel. (215) 864-2800
Fax (215) 964-2808

*Attorneys for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I, Randy Howry, hereby certify that on February 4, 2022, I caused the foregoing to be filed using the Court's CM/ECF system, and thereby electronically served it upon all registered ECF users in this case.

By:     /s/ *Randy Howry*
              Randy Howry